### DAVIS *against* KINGSLEY and others.

Where *B*, having covenanted with *A* to convey to him certain lands *owned* by *B* or *C*, produced in evidence deeds of such lands to *C*, without any evidence that the grantors or *C* had any possession of the premises, or any other evi-

*New-London,*
July, 1839.

Davis
*v.*
Kingsley.

dence of title, except that they were pointed out by C to appraisers, to be appraised under the agreement between the parties; B claimed, that this was *prima facie* evidence of title in C, and prayed the court so to instruct the jury; the court submitted the question of fact to the jury, whether B had shewn any title to such lands; and the jury gave a verdict for A ; it was held, that B had shewn no evidence of title in C, and consequently, he could not complain of the charge.

Where by the terms of the agreement, in such case, the lands to be conveyed to A, were to be appraised subject to incumbrances; and it was shewn by A, that it was understood between him and B, that the lands offered by B, were subject to a judgment lien of 20,000 dollars; B then gave in evidence the admission of the judgment creditor that the judgment was confessed only as security for indorsements, and that no more than 1250 dollars remained due on such judgment; it was held, 1. that the admission of B, received without objection, was proper evidence of the amount of the lien; 2. that the admission of the judgment creditor did not prove a discharge of the lien or a reduction of it to 1250 dollars, so as to make it the duty of the court to charge the jury to that effect.

To an action on a covenant between A and B, wherein A covenanted to deliver to B certain goods, and B covenanted to convey to A lands in the city of *Buffalo,* to be selected by A out of any such lands, the property of B or C, provided B or C should own any such lands, at that time, and if not, then B should pay A the money for such goods; B pleaded, first, that A refused to select any lands or perform on his part, and that B had performed, and had been ready to perform, on his part; and in two other pleas, B averred, that A selected certain lands out of the city of *Buffalo,* owned by C, a deed of which C delivered to A, and A accepted it, in payment (as averred in one plea) and in part payment (as averred in the other) of what was due to A for goods. Issues being joined on these pleas, B, on the trial, claimed, and prayed the court to instruct the jury, that if he or C owned any lands in *Buffalo,* although of less value than the sum due to A for goods, A was bound to receive such lands in part payment of such goods; it was held, that upon these issues, no question could arise whether A was bound to accept part payment in lands, because the issues tendered were, that he had actually accepted such part payment.

A having covenanted to deliver to B certain goods, the value of which was to be determined by the prices put on similar articles sold by D, during the preceding six months; A, to prove such value, exhibited in evidence bills of such articles, made out by D, with the prices carried out, in the usual form, accompanied with evidence that A had shewn these bills to B, who admitted that they were correct. In an action on the covenant, brought by A against B, as principal, and C, as surety, it was held, that this evidence was available not only as it affected B, but also as it affected C.

Though the contract of a surety is to be construed strictly, and is not to be extended beyond the fair scope of its terms; yet when the case is brought within the terms of the contract, justice, as well as law, requires, that he who has assumed an obligation for another, should faithfully fulfil it.

Therefore, where the counsel for the defendants, in an action against principal and surety, in addressing the jury, urged the hardship of subjecting the surety, who was the only responsible person; and the court, in charging the

jury, cautioned them against being influenced by such considerations; it was *New-London,* held, that this caution was properly given.

This was an action of debt on bond against *Alpheus Kingsley, Elisha Mansfield* and *James S. Clark.* The bond was dated the 14th of *September,* 1836, and was executed by *Kingsley,* as principal, and by *Mansfield* and *Clark,* as sureties. Annexed to it was a condition stipulating for the performance of the following agreement by indenture between the plaintiff and *Kingsley:* "That the said *Davis,* for the consideration hereinafter named, and for the consideration of one dollar, the receipt whereof is hereby acknowledged to him paid, by the said *Kingsley,* doth hereby covenant, contract and agree to and with the said *Kingsley,* that he, the said *Davis,* will, with all convenient dispatch, deliver, for said *Kingsley,* at the office of Messrs. *Parker, Wilson & Co.,* at No. 8, *Platt* street, in the city of *New-York,* a quantity of brass and iron wood-screws, now on hand, and in the office aforesaid, or manufacturing in the premises occupied by said *Davis* at *Greenville,* in said *Norwich,* together with the merchandise now there in said *Greenville;* being all of a value not exceeding 10,000 dollars: the valuation to be put upon said articles, brass and iron wood-screws, to be determined, by the prices put upon similar articles, sold by said *Parker, Wilson & Co.,* as declared by them during the last six months. And the said *Kingsley,* in consideration of the premises, and of the several matters and things by said *Davis* to be performed as aforesaid, doth covenant and agree to and with the said *Davis,* that he will convey, or cause to be conveyed, by good and sufficient warranty instrument of conveyance, to said *Davis,* his heirs or assigns, land lying in the city of *Buffalo* aforesaid, to be selected by said *Davis* out of any such lands, the property of said *Kingsley,* or of *James S. Clark* of said *Buffalo,* or of them both jointly, at the time when said screws, merchandise, &c. shall be delivered as aforesaid, at the office of said *Parker, Wilson & Co.:* provided, said *Kingsley* or *Clark* shall own any such land as aforesaid; and if said *Clark* or said *Kingsley* shall not, nor either of them, own any land as aforesaid, in said *Buffalo,* at the time aforesaid, then said *Kingsley* will pay said *Davis* the money for said articles delivered as aforesaid, by said *Davis,*

according to the valuation aforesaid.  And said lands to be conveyed as aforesaid to said *Davis*, shall be received by him, at a valuation or price ; which, if the parties hereunto cannot agree therein, shall be fixed and determined, by *William B. Rochester* and *Stephen Champlin*, both of said *Buffalo*, or such other person or persons as the parties hereto shall agree upon : said lands to be free from all incumbrance, or appraised in reference to any incumbrance which may exist upon them, or any part of them.  In testimony whereof, the parties have hereunto set their hands and seals, this 14th day of *September*, 1836.

*Alpheus Kingsley.*    [L. S.]
*Noah Davis.*"    [L. S.]

The defendants pleaded three special pleas.  In the first, it was averred, that *Clark* owned lands in *Buffalo* of much greater value than the screws, &c. ; that he requested *Davis* to select from such lands, that they might be conveyed according to the agreement ; that he offered to have the value of such lands ascertained, by the appraisal of the persons named as appraisers in the indenture ; and that he had been, at all times, ready to perform on his part, but that *Davis* had neglected and refused to select any lands, of said *Clark*, in said city of *Buffalo*, and refused to receive any such lands in payment for said screws, &c.

In the second plea, it was averred, that *Clark*, being the owner of lands to the value of 30,000 dollars, requested *Davis* to select from the same, lying either within or without the city of *Buffalo ;* and that *Davis* selected five lots, lying without the city, but adjoining thereto, and agreed to receive them at the price fixed by the appraisers named in the indenture ; and that said appraisers appraised the value of the five lots at 6,935 dollars, over and above all incumbrances : whereupon *Clark* executed and *Davis* received a good warranty deed of those lots, in part payment for the screws, &c. ; and *Clark* further showed other lots in the city of *Buffalo*, and requested *Davis* to select, but he refused to select, and refused to receive a conveyance of any lands whatever in the city of *Buffalo*, upon the terms stated in the indenture.

In the third plea, it was averred, that the value of the screws, &c. delivered by *Davis*, according to the prices put upon similar articles sold by said *Parker*, *Wilson & Co.*, as declared by

them, during the six months next before the date of said inden- *New-London,*
ture, amounted to 3,500 dollars, and no more ; and that, at the —— *July, 1839.*
time of the delivery, *Clark* showed *Davis* various lands—    Davis
(neither said *Clark* and *Kingsley* jointly, nor said *Kingsley*    *v.*
alone, owning any other lands) and *Davis* selected the five lots    Kingsley.
mentioned in the second plea, which were appraised, as there
stated, at 6,935 dollars, and of which *Davis* received from
*Clark* a good warranty deed ; the amount of the appraised
value of the lands being more than the value of the screws,
&c., valued according to the indenture of agreement ; and that
said *Kingsley* has so fully paid for the same, and has done all
things of him required by said agreement.

These pleas were traversed by the plaintiff ; and issues were
joined thereon.

The cause was tried at *New-London*, *January* adjourned
term, 1839, before *Church*, J.

On the trial, the defendants, to prove that *Clark* owned the
lands averred to have been conveyed, read in evidence sundry
deeds, containing the usual covenants of *seisin* and warranty,
bearing date previous to the date of the bond on which the
plaintiff brought his action, duly acknowledged and recorded,
purporting to convey to *Clark*, in fee-simple, the lots therein
described, subject to certain incumbrances therein mentioned.
But the defendants offered no evidence other than such deeds,
to prove, that the grantors therein mentioned, ever had any
possession or title to the lands ; nor did the defendants offer
any evidence of any possession by *Clark* of any of the lots,
except that he pointed out and designated such lots to the
appraisers.  The plaintiff, in argument, claimed, that such
evidence was insufficient to prove ownership in *Clark ;* but
the defendants claimed, that it afforded *prima facie* proof,
and sufficient, unless rebutted by the plaintiff.  The court gave
no instructions to the jury on this point, but submitted the
question to them, as a matter of fact, whether *Clark* did own
the lands.

The plaintiff offered evidence to prove, that when *Kingsley*
gave notice to *Davis* of the lands owned by himself and *Clark*,
it was understood between them, that those lands, or some of
them, were subject to a judgment lien of 20,000 dollars, con-
fessed by a former owner.  The defendants offered evidence to
prove, that the judgment creditor had said, that such judgment

was confessed only as security for indorsements, and had admitted to *Clark,* that no more than 1250 dollars remained due on such judgment.   This evidence was admitted without objection ; but there was no other evidence that said judgment had been, in any other way, extinguished or satisfied, in whole or in part, or that said lien had been in any way removed. The defendants claimed of the court to charge the jury, that they ought to consider that no greater sum than 1250 dollars, remained as a lien upon the lands ; but the court refused so to charge.

The defendants claimed, that the contract between the parties, was such, that if the jury should find, that *Clark* or *Kingsley,* or both of them, owned any land in *Buffalo,* although the value thereof, the incumbrances considered, might be less than the amount of the goods delivered by *Davis,* yet the plaintiff was bound to receive the same at its appraised value, in part payment for such property ; and prayed the court so to charge the jury ; which the court refused to do.

The plaintiff, for the purpose of proving performance of the contract on his part, by delivery of the goods therein mentioned, read in evidence the bills of such goods, as received by *Parker, Wilson & Co.,* and by them made out, with the prices annexed, in the common form, accompanied with evidence that before any thing had been done in reference to the appraisal and conveyance of the lands, the plaintiff, by his agent, had exhibited these bills to *Kingsley,* who acknowledged that they were correct.   This evidence was received without any objection, by the defendants ; but in the argument of the cause before the jury, the counsel for the defendants claimed, that *Mansfield,* one of the defendants, being a mere surety for *Kingsley,* ought not to be prejudiced, or affected, by the acknowledgment of *Kingsley :* whereupon the judge remarked to the counsel, that this being a joint action, upon a joint and several bond, all the defendants were to be treated as principals.

In the further argument of the cause to the jury, the defendants' counsel claimed, that *Kingsley* and *Clark* were insolvent, and that *Mansfield,* the other defendant, was the sole responsible person ; and that being a mere surety, a verdict for the plaintiff would be peculiarly hard and oppressive upon him. The court, in the charge to the jury, remarked, that they

ought not to be influenced, by considerations of that character;

and that whether *Mansfield* was surety or principal, should, in this respect, make no difference.

The plaintiff had a verdict; and the defendants moved for a new trial.

*Child* and *Foster,* in support of the motion, contended, 1. That the defendants were entitled to a charge from the court to the jury, that the evidence as to *Clark's* title to the land in question, was good *prima facie.*

2. That it should have been submitted to the jury, as a question of fact, to find what was the amount of incumbrances on the land. The jury took the case under the assumption that the incumbrance of one judgment amounted to 20,000 dollars. We claimed the proof to be, that there was but 1250 dollars due on that judgment. The jury ought to have passed on that question.

3. That the legal construction of the contract, is, that if the defendants, *Clark* and *Kingsley,* owned any land in the city of *Buffalo,* although the value of it over and above the incumbrances might be less than the property delivered, the plaintiff was bound to receive it, at its appraised value, in part payment, and call on the defendants for the balance only. The defendants were entitled to the benefit of this instruction to the jury.

4. That the doctrine laid down on the trial, that this being a joint action on a joint and several bond, all the defendants were to be treated as principals, though correct as an abstract proposition, is erroneous when applied to an admission made by one of the defendants, going to prove, if any thing, a new contract, and of course, to hold his co-defendants to a contract which they never made.

*Strong* and *W. H. Law,* contra, contended, 1. That the deeds alone did not prove title. No evidence of possession was offered, by the defendants, in themselves, or in those from whom they claimed to derive title. Deeds are evidence only where a sufficient ground has been laid, by proof of the ownership and possession of the party, from whom title is derived. 1 *Stark. Ev.* 325.  1 *Phill. Ev.* 408. n. *a.*  A deed cannot be given in evidence, until some interest is shewn, either in law or equity, in the grantor. Lessee of *Peters* v. *Condron,*

2 *Serg. & Rawle*, 84.    *Faulkner* v. Lessee of *Eddy*, 1 *Binn.* 188.

2. That the declarations of the judgment creditor as to payment of his lien, were not conclusive.   A judgment is matter *of record ;* and the best evidence of satisfaction is from the record.   This evidence the defendants were bound to produce. The most that they could ask the court to charge the jury, was, that these declarations were evidence of satisfaction.   But in truth, they were not even evidence of satisfaction ; for the judgment creditor might have been examined as a witness. The defendants, however, had the benefit of this testimony, and the jury found against them.   They have now nothing to complain of.

3. That the contract did not authorise a *part* payment in lands.   The contract was *entire.   Champion* v. *Short*, 1 *Campb.* 53.   *Walker* v. *Dixon*, 2 *Stark. Ca.* 281.   *Waddington* v. *Oliver*, 2 *New Rep.* 61.   *Baldey* & al. v. *Parker*, 2 *Barn. & Cres.* 37.   *Chambers* v. *Griffith* & al. 1 *Esp. Rep.* 150.

4. That the bills of *Parker, Wilson & Co.*, accompanied with evidence that they had been shown to *Kingsley*, who admitted that they were correct, were admissible.   Where a party refers to another for an answer, on a particular subject, the answer is evidence against him, although not communicated, as he makes him his accredited *agent* for that purpose. 2 *Stark. Ev.* 42.   *Gainsford* v. *Grammar*, 2 *Campb.* 9. *Daniel* v. *Pitt*, 1 *Campb.* 366. n.   *Lloyd* v. *Willan*, 1 *Esp. Rep.* 178.   But here, the appraisal by the person agreed on, was communicated to one of the defendants, and by him admitted to be correct.   An account delivered by a principal charging himself, is evidence against his surety.   *Lysaght* v. *Walker*, 5 *Bligh, N. S.* 1.   Besides, the evidence was admitted without objection.

5. That the sureties were liable to the same extent as the principal.   *Theobald on Surety*, 75. [151.]   *Id.* 45. [87.]   *Id.* 59. [118.]

6. That the argument of *hardship* is of no avail.   It would be quite as hard, if the plaintiff could have no benefit from the security, on the faith of which he parted with his goods.

WILLIAMS, Ch. J.   It appeared that *Kingsley*, the cove-

nantor in the original agreement, had contracted to receive *New-London, July, 1839.* certain goods of the plaintiff, and to convey to him lands own- Davis *v.* Kingsley. ed by himself or *Clark*, another defendant, in the city of *Buffalo*; and for the purpose of shewing that he had performed such contract, he offered in evidence deeds, with the usual covenants of seisin and warranty, of certain lands in said city, to *Clark*, without any evidence that the grantors or *Clark* had any possession of said lands, or any other evidence tending to shew title, except that said lands were pointed out by said *Clark*, and designated to the appraisers, to be appraised under said contract. This evidence having been received without objection, the plaintiff claimed, that the defendants had failed to shew any title to these lands. The defendants claimed, that this was *prima facie* evidence of title in *Clark ;* and that so the jury ought to be told. But the court submitted the question of fact to the jury, whether the defendants had shewn any title to said lands.

The defendants now claim, that the exhibition of these deeds to *Clark*, accompanied with his claim to the land, and pointing out the same to the appraisers, is such evidence of title in him, that a new trial should be granted, because the judge did not instruct the jury, that it was *prima facie* evidence of title. No authority is brought in support of this claim ; and we know of none which will sustain it. Indeed, the exhibition of a deed from one who appears to be an entire stranger to the estate, not having the lowest evidence of title, the possession of the property, only shews, that the party has a right from one who claims title, and who thereby conveys but a naked claim ; and the fact that one of the defendants pointed it out to the appraisers for appraisal, only shews, that he *claimed* the property ; but this certainly furnishes no evidence of any thing more. It proves neither possession, nor the right of possession, nor the right to property. And it is laid down in elementary writers, that a deed from a person shewing neither title nor possession, of itself, would have no effect ; for its force and effect depends entirely upon its connexion with the acts of ownership and possession ; and proof of the execution of deeds, by parties wholly unconnected with the estate, would avail nothing to prove a title. 1 *Stark. Evid.* 325. And in *Pennsylvania*, it has been expressly decided, that such a deed is not evidence, unless relevant ; and that it

*New-London,*
July, 1839.
————————
Davis
*v.*
Kingsley.

cannot be relevant, unless the grantor has some right. Lessee of *Peters* v. *Condron*, 2 *Serg. & Rawle*, 84. *Kennedy* v. *Bogert* & al., 7 *Serg. & Rawle*, 97.

We think that the defendants shewed no evidence of title to these lands; and they, therefore, cannot complain of the charge of the court in leaving this a question of fact to the jury.

The plaintiff offered evidence to prove, that when the lands in *Buffalo* were appraised, it was agreed and understood, by the parties, that they were subject to the lien of a judgment for the amount of 20,000 dollars, confessed by a former owner. To meet this, the defendants offered evidence to prove, that said judgment-creditor had confessed, that the judgment was security only for indorsements; and that no more than 1250 dollars remained due thereon. This evidence was admitted without objection; but the court was called upon to say to the jury, that only that sum remained due thereon; which it refused to do. And under this objection, it is now claimed, that the admission of *Kingsley* that there was an incumbrance of 20,000 dollars, could not be given in evidence, but the record should have been produced. *Kingsley* was the man, who offered this land in payment; and by the terms of the contract, it was to be appraised subject to the incumbrances. What those incumbrances were, ought to have been known to the party who offered the lands; and his admission with respect to them was certainly proper evidence in the case. But were it otherwise, it was not objected to, on the trial; nor is it made a ground of complaint in this motion.

But it is urged, that if *Kingsley's* admissions were evidence of the amount of the lien, the declarations of the judgment-creditor must also be admissible, to shew that amount. There is, however, an important distinction in the cases. The one is the admission of the party upon the record, made for the very purposes of a valuation of this property; the other, the admission of a person neither party nor privy to this suit, and who, for aught that appears, might have been a witness in the cause. And as presumptive evidence is not sufficient to shew a discharge of a lien existing upon lands, (3 *Stark. Ev.* 1611. *Barnwell* v. *Harris*, 1 *Taunt.* 430.) we should doubt whether this lien could be considered as removed, by the parol declarations of the judgment creditor. We do not feel called upon, however, to express any opinion upon that subject; be-

cause this evidence was suffered to go to the jury, and the court

was not bound to give them an opinion as to the weight of this evidence.

Again, it was claimed, that if the property in *Buffalo*, owned and offered by the defendants under this contract, was not sufficient to pay or satisfy the claim of the plaintiff; yet the court should have charged the jury, that the plaintiff was bound to receive what was so owned and offered, at its appraised value, in part satisfaction of his claim. The court are not apprised upon which of the issues joined in this cause the defendants suppose this opinion should have been given. We must, therefore, briefly examine each of them.

In the first plea, it is alleged, that *Clark* owned real estate in *Buffalo* to a much greater amount than the plaintiff's claim ; but that the plaintiff refused to select any lots, or perform on his part ; and that *Kingsley* has done and performed, and ever has been ready to do and perform, all he was obliged to do and perform under said contract. Now, as in this plea it is not averred, that the defendants ever tendered to the plaintiff a deed of any lands whatever, we see nothing in this issue, which called for the expression of any opinion by the court upon this subject. The claim was, that *Clark* had a much greater estate than sufficient to pay the plaintiff ; not that he offered to pay a part in real estate and the rest in money.

In both the 2nd and 3rd pleas, the defendants aver, that the plaintiff selected certain lands out of the city of *Buffalo*, owned by said *Clark*, which were appraised at 6,935 dollars over the incumbrance, of which *Clark* delivered to the plaintiff a good and sufficient deed, and the plaintiffs accepted the same, in part payment, (as averred in the 2nd plea,) and in payment, (as averred in the 3rd plea,) of what was due to him for said screws, &c. Upon these issues no question could have arisen whether the plaintiff was bound to accept part in lands and part in money ; because the issues tendered were that he had actually accepted part. Of course, the question whether he was bound to have done this, could not have been made.

If we take a more general view of the subject, we shall arrive at the same result. *Kingsley* contracts to pay for the goods he receives of the plaintiff, by lands owned by himself or *Clark* in *Buffalo, provided they own any such lands.* If they shall not own any such lands in *Buffalo*, at the time

specified, they promise to pay money for these articles. Now, without determining whether this contract falls within the principle of the cases cited by the plaintiff's counsel, we are of opinion that the defendants have not done what they ought to have done, if the construction of this contract is such as they claim. They say, they might have paid part in lands, and part in money; but the jury have found, that they have not paid all or even part in lands. But they say, they were ready and willing to do it. Why, then, did they not do it? Because the plaintiff would not select his land. But if *Kingsley* had a right, by his contract, to pay part only in lands, if he or *Clark* had not lands enough to pay the whole, no selection could have been made. The plaintiff must take such as remained: and it was the defendants' duty to have conveyed them.

Is it said, the plaintiff would do nothing as to the appraisal? If the parties did not agree as to the value, it was to be settled by appraisers selected in the contract. The defendants, then, had only to call them out, and to shew them the lands, and get their opinion, and make and tender a deed of the lands to the plaintiff, and the balance in cash. Having done this, they would have done all they could have done. Not having done this, they have omitted to do what they might have done, and what they ought to have done; and they may as well say, that the plaintiff cannot recover the balance of money which may be due, because they were willing and ready to pay it, as to say that he cannot recover the value of the lands, which it was their duty to tender to him; unless they were prevented from making that tender, by some act of the plaintiff, or some neglect of his. This ground of objection, then, must fail.

Another objection of a different character, was made. The contract provides, that the value of the plaintiff's goods was to be determined, by the prices put on similar articles, sold by *Parker, Wilson & Co.*, as delivered by them, during the last six months. To prove what that price was, the plaintiff read in evidence bills of such articles, made out by *Parker, Wilson & Co.*, with the prices carried out, in the usual form, accompanied with evidence that before any thing had been done with reference to the appraisal and conveyance of the lands, the plaintiff had exhibited said bills to said *Kingsley*, one of the

defendants, who agreed that said bills were correct; which
evidence was received without objection. But the defendants claimed in the argument, that this evidence could not affect
*Clark* and *Mansfield,* the sureties. The judge, however, held, that as regarded this case, all the defendants must be considered as principals.

It has not been contended, that this evidence was not proper, so far as it regarded *Kingsley ;* but it was said, it could not affect the sureties; that *Kingsley* having entered into this contract, at a subsequent time *Clark* and *Mansfield* unite with him in a bond, that he shall perform it; that they are only sureties that *Kingsley* shall perform his contract and pay for the goods he receives, in the manner and by the rule there specified ; and that no evidence is adduced of prices according to the previous sales of *Parker, Wilson & Co. ;* and that a new rule is now introduced, by *Kingsley,* of estimating the value, by which the defendants are to be charged in a different manner from that to which they agreed. By the bond, the defendants all agree, that *Kingsley* shall perform his contract; that is, that he shall pay for the goods the stipulated prices, to be ascertained by the sales of *Parker, Wilson & Co.* How can those sales be known ? They might have been proved, by the testimony of *Parker, Wilson & Co.* That was not adduced ; but bills of goods purporting to be sold by them were exhibited to *Kingsley,* as evidence of those prices, and by him admitted to be correct : and this is offered to shew what the plaintiff should be allowed for his goods. No new contract, then, is offered to be proved ; but the object of the evidence was to shew, that the terms of the former contract had been complied with. No better evidence could have been had of the prices of *Parker, Wilson & Co.,* than their bills, if those bills were properly proved. And the admissions of a party to the contract and a defendant in the cause, and the person upon whom ultimately the whole responsibility must fall, was certainly proper evidence in the case ; and in the absence of other evidence, must have been sufficient, against one of the defendants, to entitle the plaintiff to a verdict as against him. But how can the plaintiff obtain this verdict, if the evidence is not to operate against all ? We will suppose there is no other evidence of the price of the goods, and this is not to affect the sureties ; is the plaintiff to obtain a verdict

against the principal for the value of the goods, and a verdict for nominal damages only, against the sureties, or a verdict in their favour?

In an action upon a joint contract, proved to have been jointly executed, we know of but one rule of damages, as it respects all the defendants. If the defendants' claim is correct, the consequence must be, that no recovery can be had against *Kingsley,* any more than against the other defendants, as they might be affected by it, and thus the admissions of a party could not operate against himself. We understand the law to be so that where two or more persons sign a note or bond jointly, the admissions or declarations of one may, and ordinarily must, affect the other. Such has been the course of decisions with regard to the statute of limitations; and we know of no principle which will exempt a surety from this rule, if he connects himself in the same note or bond with his principal, and is sued with him.

But even where the principal has been sued alone, and a judgment rendered against him, that judgment is sufficient evidence in an action against the surety, to shew a right in the creditor to recover of the surety upon his bond. *Willey* v. *Paulk* & al. 6 *Conn. Rep.* 74. And yet that judgment may have been obtained merely upon the admissions of the principal; and whether the suit is first brought against the original debtor alone, or against him and his sureties, the hardship is the same, and we think the law is the same. We concur entirely with the judge at the circuit, that for this purpose, all are principals. Were authority necessary, we think the recent case of *Lysaght* v. *Walker,* 5 *Bligh, N. S.* 1., would be sufficient, where it was held, that an account delivered by a principal, charging himself, is evidence against his sureties.

It seems, also, to be objected to the charge of the court, that they cautioned the jury against being influenced by considerations addressed to them arising from the circumstance that the loss must fall upon one of the defendants only, who was a mere surety. Where a person stands in the relation of a surety, his contract is to be construed strictly, and is not to be extended beyond the fair scope of its terms. *Miller* v. *Stewart* & al., 9 *Wheat.* 680. But when the case is brought within the terms of the contract, we know of no principle of law or justice,

which will authorize the triers to surrender their convic- *New-London,* tions to the supposed hardship of the case.   Justice, as well as July, 1839. law, requires, that he who has assumed an obligation for Davis another, should faithfully fulfil it ;  and although as men, jurors Kingsley. may sympathize with those who suffer, yet as honest men, bound by oath to administer judgment according to law and evidence, they were properly cautioned, by the presiding judge, against the appeal made to their feelings, by the counsel for the defendants.

Upon the whole, we see no cause for a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.