Nov. Term,
1849.

Carpenter
v.
Lockhart.

---

CARPENTER and Another *v.* LOCKHART.

To sustain a suit for damages, on a covenant to convey real estate, occasioned by the non-conveyance, the plaintiff must show a demand of a deed or a sufficient excuse for the failure to make it, and the covenantor's want of title is a sufficient excuse.

The defendants covenanted to convey to the plaintiff 200 acres of land such as they should select out of a tract they owned in *Union* township, &c., if the plaintiff elected to take them, on his paying the purchase-money. The plaintiff alleged in his declaration, that the defendants selected the said 200 acres, (describing them,) but they had not conveyed, &c. *Held,* that the declaration was not bad under the statute of frauds in not showing a covenant containing a particular description of the land to be conveyed, and that the plaintiff might prove by written, if not by oral, testimony, the selection of the land.

An agreement contained a number of stipulations, damages for the breach of some of which would be certain, and of others uncertain, and contained a mutual covenant, that if either party should fail "in any particular to abide by, observe, and perform the above written agreement, or any article, clause, covenant, or promise therein contained, by and on his or their part to be observed, kept," &c., "the party so failing, &c., shall pay the other party 10,000 dollars (and no greater or smaller sum) as, and for the damages occasioned by such failure," &c. *Held*, that the sum was to be regarded as a penalty and not as liquidated damages.

Nov. Term,
1849.

CARPENTER
v.
LOCKHART.

APPEAL from the *Knox* Circuit Court.

Monday,
November 26.

PERKINS, J.—Covenant by *James Lockhart* against *Willard* and *Alvin B. Carpenter* upon a sealed instrument which, after reciting that difficulties had arisen in the management and settlement of the business of the firm of *J. Lockhart* and *Co.*, composed of said *James Lockhart*, *Willard Carpenter*, and *Alvin B. Carpenter*, and that said firm had been dissolved and each of the parties to it restrained by injunction from personally interfering in the settlement of its business, proceeds—"To the end, therefore, that the members of said last-mentioned firm, may, between themselves, amicably settle the business and dispose of the property of said firm, it is agreed by and between the said *Lockhart* of the one part, and *Willard* and *Alvin B. Carpenter*, of the other part, that the business of said firm of *J. Lockhart* and *Co.*, shall be settled in the following manner, to-wit:"

1. The chancery suit in which the above mentioned injunction was granted, shall be dismissed by *Lockhart*.

2. The lands and effects of the firm, and also the lands owned by *Lockhart*, and by the *Carpenters*, severally, in *Union* township, *Vanderburgh* county, *Indiana*, and a tract of land purchased of *C. D. Bourne*, shall be taken into the settlement, and shall be divided into three parcels, as follows: 1. The dry goods, &c.; 2. The residue of the effects of the firm and the aforesaid lands in *Union* township; 3. The *Bourne* tract; of which parcels, the *Carpenters* shall take the first, at, &c., and they shall say, in writing, what the other two are severally worth.

3. It shall be at the option of *Lockhart* which of the two said parcels, so to be valued by the *Carpenters*, he

will take at the valuation, but he shall take one of them, and they the other.

4. The first parcel (taken by the *Carpenters*) shall be applied towards the payment of a debt due them from the firm ; and the balance due them, with the other debts of the firm, shall be paid by the party taking the second parcel.

6. The party found indebted at the close of the settlement, shall give notes, to the acceptance of *A. Warner*, for the payment of such indebtedness in six, twelve, and eighteen months.

12. The number of acres of *Union* township land to be brought into the settlement by said *Carpenters*, shall not exceed the number of acres owned by *Lockhart* in said township.

13. Each of the parties to these presents shall convey to the other, by good and sufficient deed or deeds, &c., " all such real estate, as such party, or parties, shall, by virtue of this agreement, be entitled to have so conveyed so soon as the purchase-money therefor shall be fully paid."

15. The party taking the property in the second division, shall give bond, &c., for the application of the property to the payment of the debts of the firm of said *Lockhart* and *Co.*, " and that said debts shall be paid without unnecessary delay."

16. The parties mutually covenant with each other, that if either shall fail "in any particular to abide by, observe, and perform the above written agreement, or any article, clause, covenant, or promise · therein contained, by and on his or their part to be observed, kept, abided by, and performed, the party so failing," &c., "shall pay the other party the sum of 10,000 dollars (and no greater or smaller sum) as, and for the damages occasioned by such failure," &c.

Some of the items in the agreement have been omitted, as will be some of the averments in the declaration, as unimportant to the decision of the cause.

The declaration avers—1. That the chancery suit was

dismissed; 3. That all the property, real and personal, mentioned in the agreement, was taken into the settlement, and divided into three classes; 4. That *Lockhart* owned 200 acres of land in *Union* township; 5. That the *Carpenters* claimed to be the owners of 200 acres in said township; 6. That *Lockhart* and *Co.* owned 466 acres in said township; 7. That said three parcels of land were taken into the settlement; 8. That certain lands (particularly described in the averment) are those brought into the settlement by the *Carpenters;* 10. That the *Carpenters* stated, in writing, the value, severally, of the second and third classes of property; 12. That *Lockhart* took the second class; 14. That *Lockhart* fell in debt to the *Carpenters* 4,967 dollars and 65 cents; 15. That in said sum was included the value of the *Carpenters'* land in *Union* township brought into the settlement; 16. That *Lockhart* gave his three notes, dated *January* 19, 1838, to the *Carpenters* for said sum, to the acceptance of *A. Warner*, payable in six, twelve, and eighteen months from date; 17. That he gave security to the acceptance of *A. Warner*, for the payment of the debts of the firm without unnecessary delay; 18. That *Lockhart* had paid all of said notes except the sum of 336 dollars for which the *Carpenters* had obtained judgment; 19. That *Lockhart* tendered said balance to the *Carpenters* on the 29th of *July*, 1845, being before the commencement of this suit; 20. That, at the time of said tender, *Lockhart* demanded a deed, &c.; 21. That the *Carpenters* refused the money tendered and failed to make the deed, &c.; 22. That the *Carpenters* have not and never had a title to the land, and cannot, and never could, convey, &c.; 23. That the *Carpenters*, although often requested, &c., have failed to pay the 10,000 dollars, &c.

The *Carpenters* pleaded eighteen pleas. The 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, and 18th, denying the 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 12th, 13th, 15th, 16th, 17th, 18th, 19th, and 20th averments. The 17th plea alleges that *Lockhart* did not pay the debts of *Lockhart* and *Co.*, but that the *Car-*

*Nov. Term, 1849.*

CARPENTER
v.
LOCKHART.

penters were compelled to, and did pay them to the amount of 500 dollars. *Lockhart* took issue on all the pleas except the 3d, 5th, and 17th, to which demurrers were sustained. Trial by jury; verdict and judgment for *Lockhart* 'for 10,000 dollars. .

The defendants, the *Carpenters*, appealed to this Court, and they urge the following, among others, as grounds for the reversal of the judgment below:

1. The declaration is insufficient. ·
2. The Court erred in their instructions to the jury.

The first objection to the declaration is that it does not aver a payment, or tender, of the purchase-money on the 19th of *July*, 1839, the day the last instalment fell due. It is insisted that the contract on the part of *Lockhart* to pay the last instalment of the purchase-money on a given day, and on the part of the *Carpenters* to make a deed so soon as the purchase-money should be fully paid, makes the payment of the money and the execution of the deed dependent concurrent acts, and fixes the day for their performance, viz., the 19th of *July*, 1839; and that, hence, it was necessary for either party in suing the other for non-performance, to aver performance, or an offer of performance, on his part, on that day. We incline to this construction of the contract, and hold that *Lockhart's* declaration must aver performance, or an offer of performance, or, further, an excuse for the failure to so perform, or offer, on the fixed day. Does it do either? It avers that in the notes given for the purchase-money of the land, were included over 1,000 dollars payable for another consideration—that *Lockhart* paid on the day the entire amount of the notes except 336 dollars. This shows that he paid in proper time, more than the amount of the price of the land; but as no appropriation was made (if under the circumstances there could have been) of the payment exclusively to the consideration for the land, it must be considered as paid proportionally, on the land and the other debt for which the notes were given. A part, therefore, of the unpaid 336 dollars must be purchase-money of the land. This part is not averred to

have been either paid or tendered, on the day stipulated.
Is an excuse shown? It is averred that the *Carpenters*
had no title and could not make a deed. In *Sheets* v. *An-*
*drews*, 2 Blackf. 274, it is decided that to sustain a suit
for damages on a covenant to convey real estate, occa-
sioned by the non-conveyance, the plaintiff must show a
demand of a deed, or a sufficient excuse for the failure to
make it; and in *Blann* v. *Smith*, 4 id. 517, and in *Bowen*
v. *Jackson*, 8 id. 203, it is held that the covenantor's want
of title is a sufficient excuse. It is said that the law does
not require the performance of a vain act, and that to
demand a deed of one who could not make it, would be
such an act. Now, the object of payment or tender of
the purchase-money is to entitle the party making it, to a
deed from the party to whom it is made. But if such
party have no title, he cannot require payment, he can-
not receive the tender, nor can he make the deed. The
ceremony of the tender would be unavailing. It seems
to us that if want of title is a good excuse for not de-
manding a deed, it is equally so for not making a tender.
If, in this case, the *Carpenters* had a title, they might
safely have denied the averment in the declaration, of no
title. We say nothing here as to whether the plaintiff
should show a readiness, or ability, on his part, to per-
form or tender.

Again, it is objected that it is not averred in the decla-
ration that *Lockhart* had paid the debts of the firm. We
do not think this objection valid. We do not think the
payment of the debts by *Lockhart* a condition precedent
to his right to a conveyance of the land in question. It
was to be conveyed on the payment of certain notes given
for the purchase-money, and payable at fixed times. The
debts were to be paid in a reasonable time, and what that
would be depended on the circumstances of the case. It
seems, too, that they were to be paid out of the property
taken by *Lockhart*, for he was required to, and did, give
bond to so appropriate a sufficiency of it. Nor do we
think that the single fact that the *Carpenters* paid 500 dol-
lars of those debts, as alleged in their 17th plea, certainly

showed a breach of the covenant by *Lockhart*. He did not agree to pay the debts as soon as they should be demanded, but in a reasonable time. A creditor would not be bound to wait this reasonable time, if his demand was due, but might immediately collect it from the *Carpenters*. *Lockhart* would, in such case, be bound to repay them the amount in a reasonable time (1).

Again, it is urged that the declaration is bad under the statute of frauds in not showing a covenant containing a particular description of the land to. be conveyed. The argument is, that that statute constructively requires that the written contract for the sale of land should definitely ascertain the land—that if the form of action upon the contract be assumpsit, inasmuch as at common law it is not necessary to allege the writing, and the statute has not changed the rules of pleading, the sufficiency of the writing, under the statute, is only matter of evidence; but that if the form of the action be covenant, inasmuch as at common law this form of action does require that a sealed writing be set forth, the declaration must show that the covenant complies with the statute; for example, contains a particular description of the land. In this case, a compliance with the statute is matter of pleading; and note 3, to s. 44, c. 4 of Gould's Pleading, and note 1 to p. 176, vol. 1, Williams's Saunders are cited. And it is further insisted, that in covenant, if the contract be made out from several separate writings, they must all be under seal, and shown to be so in the declaration.

If these positions are correct the declaration in this case is bad; for it does not show such a covenant as that contended for, viz., one particularly describing the lands. Item 2 of the covenant provides that *Lockhart* shall bring into the settlement to be had between the parties, his land in a certain township; and items 2 and 12, taken together, provide that the *Carpenters* shall bring in an equal number of acres out of lands owned by them in the same township. *Lockhart* owned 200 acres. The covenant, then, is, substantially, that the *Carpenters* shall bring into the settlement 200 acres of land, such as they shall select,

out of a tract they own in *Union* township, &c., and shall
convey the same to *Lockhart*, if he elect to take them, on
his paying the purchase money.   From the whole instru-
ment in which this covenant is contained, we are able to
determine the names of the parties, the number of acres
of land to be conveyed, the location of the tract out of
which they are to be taken, the mode in which they are
to be particularly designated, except as to whether it shall
be in writing, and the consideration.   The covenant is of
this character : *A.* covenants to convey to *B.* such 200 acres
of land out of a designated tract as *F.* shall designate; and
*F.* does designate.   Again;  *C.* offers by letter to purchase
.of *D.*, for a certain consideration, a lot in *Evansville.  D.*
answers by letter, not under seal, accepting the offer.  He
afterwards covenants, under seal, to convey to *C.* for the
same consideration, the lot *described in those letters* on a
particular day or pay damages, &c.   He fails to perform
his covenant.   Can *C.* sue in covenant and introduce the
letters, not under seal, to identify the lot?   We see no
reason why, under a proper declaration, he cannot.  Should
the declaration upon such a covenant simply set it out and
aver that the lot described in the letters had not been
conveyed, without averring which lot it was, the declara-
tion would probably be bad.   But in the case before us,
as we have seen, the declaration sets out articles of cove
nant containing, with sufficient certainty, all the requisites
of the contract for the conveyance in question, except the
identification of the particular 200 acres to be conveyed,
and provides for that being done.   The declaration then
avers that it was done and designates the land.   It seems
to us this is sufficient.   If this averment will not lead to
the admission of improper evidence, then it is good.  We
think it will not, and that the plaintiff might prove under
it, by written if not by oral evidence, the selection of the
land.   A written or sealed instrument does not necessa-
rily exclude all oral evidence.   A delivery different from
the date of a deed, and the non-payment óf the purchase-
money, though payment be acknowledged in it, may be
proved by such evidence.   And so where two lots have

the. same general description, that intended to be conveyed may be shown by parol.

Again, the declaration alleges that the quantity of land claimed by the *Carpenters* as theirs in said *Union* township was 200 acres; that they brought them into the settlement, &c., but had not conveyed, &c. This, in substance, is an averment that they had not conveyed to the plaintiff any land in that township, and brings the case directly within that of *Buster's Executors* v. *Wallace*, 4 Henn. & Mun. 82. It is also supported by *Davis* v. *Kingsley*, 13 Conn. 285, and *Peyton's Heirs* v. *Matson*, Litt. S. C. 37 (2).

We must now examine the instructions to the jury.

The counsel for the *Carpenters* asked the following: That unless the jury believe from the evidence, that *Lockhart* did give his notes, &c., with security to the acceptance of *A. Warner*, as stated in the declaration, they should find for the defendants; which the Court gave with this addition; unless they believe that the *Carpenters* accepted the notes or received payment, or part of it, making no objection to the security or the want of *Warner's* approval.

We think this instruction, as given, was correct. It was provided in the articles between *Lockhart* and the *Carpenters* that security should be given to the acceptance of *Warner* to prevent captious objections to the notes and bond by the *Carpenters*—to compel them to accept such as they should, not such as they might, be satisfied with. If notes and a bond were given to the acceptance of the *Carpenters* to whom they were payable, we think the legal effect of the covenant, in this particular, was complied with.

The Court further instructed the jury that if they found for the plaintiff, they must find 10,000 dollars, that sum in the covenant being liquidated damages, and not a penalty.

On this point we have no difficulty. The instruction was wrong. Some of the rules for determining whether a sum shall be considered a penalty or liquidated da-

mages, are well settled. They are stated with precision in *Hamilton* v. *Overton*, 6 Blackf. 206, and the cases establishing them are there cited. One of those rules we understand to be, that where an agreement contains various stipulations of different degrees of importance, the damages for the breach of some of which would be certain, and of others uncertain, and a large sum is expressed in the agreement as payable on the breach of any of the stipulations, such sum is always to be regarded a penalty and not liquidated damages. This case falls clearly within this rule. For instance, stipulation five is that the individual accounts, &c., of each party shall be brought into the settlement. Stipulation seven requires each party to account for all moneys received. Stipulation nine is that mistakes shall be corrected when discovered. Now, for a violation of either of these stipulations, the damages would be certain. The amount of the accounts or money withheld, or of the mistake the correction of which should be refused, would enable a Court or jury to determine them. So of other of the stipulations. On the other hand, stipulation one, requiring a dismissal of the chancery suit; stipulation six, requiring notes to the acceptance of *A. Warner;* stipulation fifteen, for the giving of a bond, &c., may sound in uncertain damages. So may some others. The various stipulations in the agreement are also of vastly different degrees of importance, and the damages for a violation of some of them would be very trifling. What we have said on this point shows that the Court also erred in refusing evidence, in mitigation of damages, of the fact that the *Carpenters* had conveyed to *Lockhart*, and he accepted a part of the lands agreed to be conveyed (3).

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, &c.

*S. Judah* and *C. Baker*, for the appellants.

*J. G. Jones* and *J. Lockhart*, for the appellee.

---

(1) Covenants are to be construed according to their spirit and intent; and where, from the subject matter of the covenant, it is the evident intent of the parties that they should be taken distributively, they may be so

Nov. Term,<br>
1849.<br>
<hr>
CARPENTER<br>
v.<br>
LOCKHART.

taken, although there be no express words of severalty.—*Ludlow* v. *McCrea*, 1 Wend. 228.

Where there are mutual covenants, and the defendant has received the principal part of the consideration for the engagements on his part, the covenants of the parties will be construed to be independent, and the plaintiff will be allowed to maintain an action for the breach of the defendant's covenants, although he has failed in part in performance on his side.—*Tompkins* v. *Elliott*, 5 Wend. 496.

See also *Doe* v. *Day*, 3 Wend. 355.—*Goodwin* v. *Holbrook*, 4 id. 377.—*Campbell* v. *Jones*, 6 T. R. 570, and *Howard* v. *Leach*, 11 Pick. 151.

(2) See also *Sterling* v. *Blair*, 4 Bibb 288.—*Jackson* v. *Delaney*, 11 John. 36.—*Craig* v. *Leslie*, 3 Wheat. 563.—*Hunt* v. *Wickliffe*, 2 Peters 201, and Mumf. 82.—*Whitehouse* v. *Langdon*, 10 N. H. R. 331.

(3) The question, whether a sum stipulated to be paid upon the non-performance of a contract, or the happening of a contingency, be a penalty, or liquidated damages, is to be determined upon the construction of the whole contract, and the intention of the parties as manifested therein.—*Brewster* v. *Edgerly*, 13 N. H. 275.

The question is to be determined by the circumstances of each case, and will not be affected by the omission of either the word "penal" or "liquidated."—*Lindsay* v. *Anesley*, 6 Iredell, 186.

In cases of doubt, the Courts should regard the stipulated sum as a penalty, dischargeable by the payment of the damages sustained.—*Baird* v. *Tolliver*, 6 Humph. 186.

A. and B. made a contract in writing, that A. should convey to B. a certain farm, and that B., in consideration thereof, should pay A. 4,000 dollars; and that each should pay to the other, should he neglect to perform his part of the contract, upon performance or tender by the other, the sum of 4,000 dollars. *Held*, that this sum was liquidated damages, and was recoverable with interest by A., in case of neglect of performance on the part of B.—*Mead* v. *Wheeler*, 13 N. H. 351.

The parties to a sale of real estate bound themselves in a certain sum, "as liquidated damages to be paid by the party failing to perform his agreement," and at the same time a judgment was given by the purchaser to secure the performance of the agreement. *Held*, that the sum fixed as "liquidated damages" was a mere penalty.—*Shiell* v. *McNitt*, 9 Paige, C. R. 101.

An agreement consisted of several particulars differing very much in importance, and contained a provision, that either party who should violate the agreement in any part, should pay the sum of 5,000 dollars "as liquidated damages;" but this provision was inserted at the suggestion of the draftsman, and it appeared to have received little or no previous attention by the parties. *Held*, that it was to be treated as a penalty.—*Jackson* v. *Baker*, 2 Edw. Ch. 471.

A contract "to pay a certain quantity of cotton in a given time, or in current money, estimating the cotton at 20 cents a pound," is for liquidated damages, and not a penalty.—*Brahan* v. *Pope*, 1 Stew. 135.

In general, a sum of money in gross, to be paid for the non-performance of an agreement, is considered as a penalty, and not as *liquidated damages*.

Where, in a building contract, the following covenant was contained—"The said houses to be completely finished on or before the 24th of *December* next, under a penalty of 1,000 dollars, in case of failure," it was *held*, that this was not intended as liquidated damages for the breach of that single covenant only, but applied to all the covenants made by the same party in that agreement; that it was in the nature of a penalty, and could not be set off in an action brought by the party to recover the price of the work.

An agreement to perform certain work within a limited time, under a certain penalty, is not to be construed as liquidating the damages which the party is to pay for the breach of his covenant.—*Tayloe* v. *Standiford*, 7 Wheat. 13.

Where it is doubtful whether the sum inserted was intended as a penalty or as liquidated damages, it will be considered in the nature of a penalty, especially if the payment of a certain damage less than the whole sum is provided for by the instrument; but where the sum applies as well to stipulations where the damages, in case of breach, necessarily must be uncertain, as to stipulations where the damages would be certain, it will be regarded as liquidated damages, and not as a penalty.

Where the plaintiffs gave 3,000 dollars for the patronage and good will of a newspaper establishment, and 500 dollars for the type and printing apparatus, and the defendants (the vendors) covenanted that they would not publish, or aid or assist in the publishing of a rival paper, and fixed the measure of damages at 3,000 dollars, the case, from its peculiar nature, and the total uncertainty of arriving at a correct conclusion, as to the amount of the damages, was *held* to be a fit and proper one for the application of the rule that the sum agreed upon should be regarded as stipulated damages, and not as a penalty.—*Dakin* v. *Williams et al.*, 17 Wend. 446.

In an agreement for the sale and conveyance of land, the vendor covenanted to convey the land, which was to be surveyed, free of incumbrances, by the 1st of *January*. The land was not surveyed in time, and the vendee declared that he would take no advantage on account of the vendor's not conveying on the precise day mentioned in the agreement. The land was some months afterwards surveyed, but the vendee refused to accept a conveyance, because it was incumbered, which was the fact. It was *held*, that the vendee, by enlarging the time, did not waive his right to recover a sum which was fixed and liquidated by the agreement, as the amount of damages to be paid by the party failing in performance, even admitting that his consent to extend the time amounted to an agreement.—*Hasbrouck* v. *Tappen*, 15 John. 200.

See also, *Smith* v. *Dickerson*, 3 B. & P. 360.—*Ashly* v. *Weldon*, 2 id. 346.—*Fletcher* v. *Dyche*, 2 T. R. 32.—*Kemble* v. *Farren*, 6 Bingh. 141.—*Davis* v. *Penton*, 6 B. & C. 216.—*Charrington* v. *Laing*, 6 Bingh. 242.—*Lowe* v. *Peers*, 4 Burr. 2,225.—*Chrisdee* v. *Bolton*, 3 C. & P. 240.—*Noble* v. *Bates*, 7 Cow. 307.—*Smith* v. *Smith*, 4 Wend. 468.—5 id. 496.—*White* v. *Dingley*, 4 Mass, 433.—*Cutler* v. *Howe*, 8 id. 257.—*Tingly* v. *Cutler*, 2 Conn. 291.—*Gammon* v. *Howe*, 14 Maine 250,—15 id. 273; and Hardin's Ky. R. 175.