COURT ROOMS OF AMERICA, INC., Daniel L. Roberts and Peggy D. Roberts, Appellants (Defendants Below),

v.

Alan DIEFENBACH and Susan Diefenbach, Appellees (Plaintiffs Below).

No. 3–280A38.

Court of Appeals of Indiana, Fourth District.

Dec. 30, 1980.

Donald B. Steininger, Fort Wayne, for appellants.

Max A. Myers, Fort Wayne, for appellees.

MILLER, Judge.

The defendant–appellants, Court Rooms of America, Inc., an Indiana corporation, (the business of which is not identified in the record), Daniel and Peggy D. Roberts, appeal the trial court's judgment in favor of the plaintiff–appellees, Alan and Susan Diefenbach, awarding them $30,600 as liquidated damages entered on the Diefenbachs' Motion for Summary Judgment. These damages were based on a $100 per day "liquidated damages" clause for failing to obtain releases of the Diefenbachs' personal liability on two commercial loans made to Court Rooms. The Diefenbachs, owners of stock in Court Rooms, had agreed to sell their stock to Court Rooms and as part of the agreement, Court Rooms and the Roberts promised to obtain releases of the Diefenbachs from such loans. The judgment represented the 306 days Court Rooms and the Roberts were in default of their promise. The appellants challenge the summary judgment as erroneous claiming the existence of a genuine issue of material fact as to damages actually suffered and suggesting the liquidated damages clause was actually a penalty and unenforceable, thereby restricting Diefenbachs to actual damages.

We reverse for the reasons stated below.

## FACTS AND ISSUES

Prior to January 17, 1978, the Roberts and Diefenbachs were the sole stockholders in Court Rooms. As such, all four individuals were personally obligated as the guarantors of various commercial loans granted Court Rooms by two financial institutions in Fort Wayne. On January 17, 1978 the Diefenbachs entered into a Sales Agreement with Court Rooms to sell it all their stock in the corporation. The Roberts signed the agreement as guarantors of the purchase. This agreement was encompassed in three documents:

1) The closing agreement set the purchase price at $110,000 with 25% to be paid on January 17, 1978 while the balance was due in equal installments on February 17, March 17 and April 17, 1978.

2) The indemnity agreement required Court Rooms to obtain releases of the Diefenbachs' personal liability on loans to Court Rooms from the Fort Wayne Federal Savings & Loan Association (Fort Wayne Federal) and the Anthony Wayne Bank, evidence of such releases to be supplied the Diefenbachs by July 1, 1978. Failure to provide these releases obligated Court Rooms to pay liquidated damages of $100 per day until the releases were obtained.

3) The escrow agreement placed the stock in escrow until Court Rooms fulfilled all conditions of the sale agreement. Daniel Roberts signed the sale agreement as Court Rooms' president with both Roberts signing it as individual guarantors. Additionally, a separate "Guaranty" clause was placed at the end of the sale agreement whereby the Roberts individually guaranteed "prompt and satisfactory performance" of the entire agreement, thereby making them jointly and severally liable for all of Court Rooms' obligations under the agreement.

When Court Rooms failed to pay the last installment and obtain the necessary releases, the Diefenbachs filed their three count complaint basing the first two counts upon the failure to pay such final installment. After summary judgment was entered on the first two counts, Court Rooms paid this installment to the Diefenbachs; consequently, this portion of the summary judgment is not raised on appeal.

Contested herein, however, is the result reached in the third count wherein the court granted summary judgment based on the Diefenbachs' allegation and evidence that Court Rooms failed to secure the requisite liability release from Fort Wayne Federal until 306 days after the time prescribed in the contract. In response to the third count Court Rooms and the Roberts asserted that they had obtained and tendered to the Diefenbachs a full release of their personal liability on the loan from the Anthony Wayne Bank and a conditional release from Fort Wayne Federal.

The Diefenbachs filed affidavits supporting their Motion for Summary Judgment. No counter–affidavits were filed. Thus the trial court had before it the following pertinent, uncontradicted facts:

1) Fort Wayne Federal did not release the Diefenbachs until May 3, 1979–306 days after the due date.

2) The Diefenbachs' contingent liability on this loan was in excess of $300,000.

3) Although the basis of the liquidated damages was not mentioned in the contract, the Diefenbachs in their affidavit stated:

"That the original draft documents considered as closing documents called for a liquidated damage provision of $\frac{1}{10}$ of 1% of the unreleased amount upon which the plaintiffs remained obligated; which amounted to a per diem sum in excess of $300.00 and constituted the equivalent of an interest rate very close to that charged by area finance companies.

It was next suggested in refining the papers that the liquidated damage clause be replaced by a provision for an agreed $180.00 per day award to plaintiffs for the failure to obtain the release of liability. Finally it was agreed upon by the parties that a figure of $100.00 per day would be appropriate in the circumstances and this clause was made a part of the agreement of the parties."

4) Due to this continuing liability the Diefenbachs claimed substantially reduced credit power which adversely affected them in that:

a) they were denied financing for a new home at an interest rate of 9.5% after which the interest rate increased to over 10.5%;

b) the contingent liability interfered with their proposed purchase of Royal Typewriter Company of Fort Wayne, Inc. which was at that time earning approximately $40,000 per year;

c) a preliminary investigation for the possible purchase of an auto dealership brought discouraging results since the auto manufacturer's representatives learned of the contingent liability and it would have had to appear on a financial statement in support of the Diefenbachs' application for the dealership; and

d) the Diefenbachs were unable to utilize the proceeds of the stock sale to Court Rooms to enter numerous profitable ventures due to the contingent liability.

## DECISION AND DISCUSSION

Our standard of review of a summary judgment is set out by Ind.Rules of Procedure, Trial Rule 56(C), and allows summary judgment only when the pleadings, affidavits, depositions, and other documents filed with the court demonstrate that there is no genuine issue as to any material facts, thereby entitling the moving party to a judgment as a matter of law. The movant must establish the absence of any material factual dispute. Consequently, the trial court in establishing that summary judgment is proper must examine the evidence in a light favorable to the non-moving party resolving any doubts against the movant. This Court in reviewing a summary judgment applies the same standard, reversing the judgment only if the record discloses an unresolved issue of material fact or an incorrect application of the law. *Stout v. Tippecanoe Cty. Dept. of Pub. Welf.*, (1979) Ind.App., 395 N.E.2d 444. Since there is no dispute that Court Rooms did not obtain a full release of the Diefenbachs' liability, the sole question left for us to answer is whether the liquidated damages was invalid as a penalty, thereby requiring the Diefenbachs to show actual damages.

■ It is axiomatic that a contract may fix a certain sum to be paid as liquidated damages in the case of a contractual breach and such provision will be enforced if entered into in good faith. Generally, a damage provision will be construed as a penalty if its purpose is to secure performance of the contract; conversely, it will be viewed as one for liquidated damages if it represents payment of a sum in lieu of performance. If the damage provision is viewed as a penalty clause and not as a clause for liquidated damages, the amount of recovery can only be the actual damages

sustained. 9 I.L.E. *Damages*, § 101 (1971). The analysis of whether a damage provision is a penalty or liquidated damages is governed largely by the facts of the particular case. *Melfi v. Griscer Industries, Inc.*, (1967) 141 Ind.App. 607, 231 N.E.2d 54. Further, the form of the instrument does not control; rather, we must look to the contractual subject as well as the probable consequences falling from the breach to ascertain the true role of the damage provision. 9 I.L.E. *Damages*, § 102.

■ The test to distinguish liquidated damages from a penalty was set out in *Czeck v. Van Helsland*, (1968) 143 Ind.App. 460, 241 N.E.2d 272, said test requiring examination of the damage provision to determine:

1) if it attempts to secure an amount for the non-breaching party which is reasonably proportioned to the amount of the actual damages which would be sustained in the event of an actual breach; and

2) whether such provision is designed to represent a measure of actual damage or is an apparent effort to penalize the breaching party.

■ From an examination of the record before us including the parties' relationship, the purpose of the agreement and the nature of the principal contract, it is our opinion that the provision in question does not satisfy the requirements in *Czeck* since it is not reasonably proportioned to the amount of actual damages sustained in the event of the breach and, therefore, constituted a penalty. More specifically, the amount of damages was fixed irrespective of the amount of the contingent liability remaining on the loans at the time of the breach. In this regard we observe that to avoid the stated liquidated damages of $100 per day two *full* releases had to be secured. As stated in the Diefenbachs' affidavit, the liquidated damages of $100 per day represented ⅓ of the then-current, daily interest rate ($300) for commercial loans in the Fort Wayne area.[1] This fraction was applied to

---

1. No evidence was presented as to the principal amounts of the loans or their terms. It can be

reasonably inferred from Diefenbachs' affidavit claiming $300 as the then-current, daily inter-

the total, contingent liability on *both* loans. However, despite the potential reduction of the Diefenbachs' contingent liability, even to a minimal amount, by obtaining full (as occurred here) or partial releases of one or both loans, full or partial payments of the loan, or a combination of the foregoing, the liquidated damages remained constant.

The illegality of assessing fixed or constant damages where breaches of varying importance might accrue was examined in *Jeffries v. Lesh*, (1924) 195 Ind. 503, 144 N.E. 881, where our Supreme Court affirmed a trial court's denial of "liquidated damages" totalling $5,000 stemming from a provision in a $27,600 real estate contract which the plaintiffs alleged required payment of such damages if any one of several conditions was breached. In *Jeffries* the title and warranty deed were to have been delivered by March 1, 1921. The alleged breach was failure to supply an abstract of title by December 1, 1920. The action was brought claiming the liquidated damages one month before the closing date. The Court accepted the general rule

> "that, where a contract contains several stipulations of various degrees of importance, the damages for the breach of some of which would be certain, and of others uncertain, and a large sum is expressed in the agreement as payable on the breach of any of the stipulations, such sum is to be regarded as a penalty, and not liquidated damages. *Carpenter v. Lockhart* (1849) 1 Ind. 434; Sutherland on Damages (4th Ed.) vol. 1, p. 294, 8 R.C.L. 571."

*Id.* at 506–07, 144 N.E. at 882. The Court held among other things that construing the contract as providing payment of $5,000 would constitute unreasonable compensation for the alleged breach and, thus, was in the nature of a forfeiture or penalty which could not be enforced. *See also Skendzel v. Marshall*, (1973) 261 Ind. 226, 301 N.E.2d 641, *cert. den.*, 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476, *app. after remand* 264 Ind. 77, 339 N.E.2d 57; *Raymundo v. Hammond Clinic Ass'n*, (1980) Ind.App., 405 N.E.2d 65, *petit. to transf. pend.; Mandle v. Owens*, (1975) 164 Ind.App. 607, 330 N.E.2d 362.

In the case before us there was admittedly one general condition to be performed, but within that one condition there remained an unconsidered possibility that the Diefenbachs' contingent liability and, consequently, their injury would be reduced after the execution of the sales agreement. Such reduction obviously could have been anticipated by the parties providing them with the ability to link reasonable compensation with the amount of the remaining liability. This reasoning is equally applicable to the Diefenbachs' contention that the contingent liability impaired their credit with regard to obtaining a home mortgage loan and purchasing two businesses. Assuming *arguendo* the nature of this damage was initially uncertain, such a situation might justify the parties' good faith agreement estimating liquidated damages, *Mandle v. Owens, supra; Tudor v. Beath* (1921), 76 Ind.App. 526, 131 N.E. 848. However, in the case considered herein the extent of the impairment to their credit throughout the period of the breach was dependent upon the actual amount of contingent liability during that period and not upon their liability at the time of the agreement. Therefore, they failed to make any provision anticipating the reduction of that liability. Based on our conclusion that the language in question constituted a penalty, the cause is reversed and remanded for a trial to permit the Diefenbachs an opportunity to establish actual damages.

Reversed and remanded.

YOUNG, P. J., and CHIPMAN, J., concur.

est rate, that at about the time the sales agreement in question was executed, Court Rooms was paying in the neighborhood of $109,000 annual interest on both obligations.