GOWER vs. SALTMARSH.

1. There is no general rule by which to distinguish a penalty from stipulated damages.

2. When A agreed to furnish B, with freight to the amount of 2,000 bushels of wheat, at twelve and a half cents per bushel, and 2,000 bushels at fifteen cents per bushel, and sufficient water for B to go out of the river with his boat with a load of 4,000 bushels on five and a half feet water, provided B, should make the trip by a given day; and on the failure of any of the conditions by A, to pay B, the full amount of freight at the stipulated prices, and in default of payment to pay $550; the condition to pay the $550 was held to be a penalty.

ERROR to St. Louis Circuit Court.

SPALDING, *for Plaintiff in error.*

TODD, *for Defendant in error.*

NAPTON, J., *delivered the opinion of the Court.*

This was an action of debt, brought by Saltmarsh on the following agreement: "An article of agreement made and entered into this 11th day of April, 1845, between J. H. Gower of the first part, and E. W. Saltmarsh, Captain, of the Steamboat Potosi, of the second part: The party of the first part agrees to furnish the party of the second part four thousand bushels of wheat, on Iowa and Cedar rivers, or other freight equivalent; 2,000 at twelve and a half cents per bushel, and 2,000 at fifteen cents per bushel; also guarantees water sufficient to admit said boat to go up as far as the rapids on Cedar, and to come out of the river with a load to the amount of four thousand bushels of wheat, on five and a half feet water, provided the said party of the second part make said trip by the 19th of April next. It is further agreed by the party of the first part, that in case of failure of any of the above conditions of said contract, he shall pay to the party of the second part the full amount of freight of the 4,000 bushels of wheat, at the prices as stipulated in the foregoing; and in default of the payment to the full satisfaction of the party of the second part, the party of the second part shall or may have the right to sue and recover the sum of $550, amount of freight aforesaid." JAMES H. GOWER, [L. S.]

E. SALTMARSH. [L. S.]

18

The declaration avers, that the plaintiff started with his boat, Potosi, for said rivers, but, in consequence of the water not being five and a half feet deep, he was delayed, and did not reach the point where the wheat was to be delivered until the 17th, and that he was then, in consequence of low water, unable to take the 4,000 bushels of wheat.   The plaintiff further avers that he took for said defendant as much lard and wheat as the stage of water would admit of, but was greatly delayed by low water on his downward trip, so that he did not reach St. Louis until the 23d.— He avers that he was ready and willing to perform his part of the engagement before recited, and that the want of five and a half feet water was all that prevented him.   He therefore demanded the $550.

An attachment was sued out and levied upon the property of Gower, and also served upon him personally.   The affidavit of Saltmarsh declared the amount of indebtedness of the defendant to be $350.   On the 24th Nov., 1845, a judgment by default was entered against the defend-ant—and "it appearing to the court," (says the record,) "from the said in-strument in writing on which this action is founded, that the said defend-ant is indebted unto the said plaintiff in the sum of five hundred dollars, and that the said plaintiff has sustained damages, &c.," a judgment was entered for the debt and damages aforesaid, and execution awarded.

On the 12th Jan., 1846, a motion was made to set aside the judgment by default and assessment of damages—accompanied with two affidavits, the one by the defendant and the other by his attorney.   These affidavits set forth that the failure to plead had been occasioned by the neglect of the attorney.   This motion was overruled.

If the sum of five hundred and fifty dollars is to be regarded as a pen-alty, and not in the nature of liquidated damages, the court could not as-sess the damages without the intervention of a jury, and the judgment founded on such assessment will be erroneous.   This error will be noti-ced, though no motion in arrest was made in the court below.   Benton vs. Lindell, 10 Mo. R., 557.

It is not very easy to extract from the adjudged cases any general rule by which penalties are to be distinguished from liquidated damages.— Judge Cowen, in his note to Spencer vs. Tilden, (5 Cow. R., 144,) thinks that no general rule ought to be adopted, at least in relation to the forms of language in which such contracts may be expressed.   If any particu-lar form of words be sanctioned by the courts as sufficient to constitute fixed damages, the parties will of course adopt this form.   The princi-ple which that learned Judge thought a sound one, and proper to be acted on, was the rule stated by Holt in his note to Barton vs. Glover;

*Gower vs. Saltmarsh.*

(Holt's N. P. Rep., 43.) "When a sum of money, whether in the name of a penalty or otherwise, is introduced in a covenant or agreement, merely to secure the enjoyment of a collateral object, the enjoyment of the object is considered as the principal intent of the deed or contract, and the penalty only as accessary, and therefore only to secure the damages really incurred."

Perhaps this rule, if understood without qualification, may infringe upon the right of parties to make their own contracts. When the damages, which may result from the performance or non-performance of certain acts, are in their nature uncertain, and rather depending in the opinion or caprice of individuals, the parties may unquestionably agree between themselves what those damages shall be, and the courts will not interfere. Dakin vs. Williams, 17 Wend., 448. But where a party stipulates to do several things, in a manner and at a time specified, and a failure in any one of them, either as to the manner in which the work is done or the time by which it is finished, is to be attended with the forfeiture of the entire sum agreed upon, whether it be denominated a penalty or liquidated damages, the courts incline to construe it as a penalty. They will not presume that it was the intention of the parties to exact a sum greatly disproportioned to the damages really sustained. Moore & Hunt vs. Platte County, 8 Mo. R., 469. In this case the defendant agreed to furnish four thousand bushels of wheat on the Iowa or Cedar rivers, and also consented to guarantee five feet and a half water in those streams, and for a failure in any of the above particulars, he agreed to pay $550, which was the value of the whole freight. The plaintiff was bound to nothing. If the defendant failed to furnish the amount of freight by a few bushels, or if the water lacked a few inches of the agreed depth, the whole sum was forfeited. Upon this construction of the contract, the $550, would clearly be a penalty. There could be no difficulty in ascertaining the actual damage sustained by the party. The parties have themselves estimated it, so far as the value of the freight is concerned.

If this agreement is to be construed, as has been contended for on a re-argument of the case, as only authorizing the plaintiff to claim the $550, in the event that no freight at all is earned, or such proportion of the $550 as will, by the addition of the freight actually earned, make up the full sum of $550, we do not doubt but the sum of $550 would not be a penalty, but merely the stipulated hire of the steamboat on the specified trip. But if this be the proper construction of the contract, the court clearly erred in assessing the damages—for the declaration admits

that a portion of the freight was earned. The intervention of a jury would have been necessary to ascertain how much freight was wanting through defendant's fault, to make the $550.

But the construction of the contract acted on by the Circuit Court, is, that the defendant, by a failure to comply with his engagements in any particular was liable for the sum of $550 as stipulated damages for the breach—so that the plaintiff though he might earn freight upon three thousand bushels of wheat, yet was entitled under the agreement, because of the failure to deliver the remaining thousand bushels, to recover the full sum of $550, as damages for such failure. By this construction, the plaintiff would make, over and above the $412 50, which he would receive for the freight delivered, the sum of $550, for the failure of the defendant to furnish the remaining thousand bushels of wheat according to contract. The damages, on this supposition, it will be seen, would be greatly disproportioned to the actual loss sustained. For we might further suppose, and it would not alter the principle, that the plaintiff encountered no difficulties in consequence of low water, and the only actual loss would be the $137 50, which he would have earned had the defendant been ready with the four thousand bushels of wheat.

The fact that the plaintiff in this case has given a credit on the execution for the amount of freight actually earned by Saltmarsh, cannot cure the irregularity of the verdict of the court.

It is unnecessary to express any opinion in relation to the motion to set aside the judgment by default.

The other Judges concurring, the judgment is revered and the cause remanded.