WILLIAM DEE MANDLE AND EILEEN L. MANDLE *v.* H. JOSEPH OWENS AND KATHRYN J. OWENS.

[No. 1-375A63. Filed June 30, 1975. Rehearing denied August 11, 1975. Transfer denied September 1, 1976.]

*Norman L. Lowery, Rosenfeld, Wolfe, Frey & Lowery,* of Terre Haute, for appellants.

*Myrl O. Wilkinson, Dix, Patrick, Ratcliffe & Adamson,* of Terre Haute, for appellees.

LOWDERMILK, J.—Plaintiffs-appellants (Mandles), by newspaper advertisement, offered their residence in Terre Haute, Indiana, for sale. Defendants-appellees (Owenses) after examining the house, entered into an agreement with Mandles to purchase the house for $30,000. Owenses at the time of the agreement made an earnest money deposit in the amount of $300.00 on the house in the form of a check.

On July 22, 1972, the parties signed a proposition which was typed, and had been dictated over the telephone by the Mandles' attorney. On July 24, 1972, Mandles, at their attorney's request, went to his office to sign an agreement which has been prepared by the attorney for the Owenses. This instrument was executed that date and was a final written agreement, pertaining to the purchase.

The contract entered into by and between the parties reads, in part, as follows:

". . . We hereby deposit with you earnest money in the sum of Three Hundred ($300.00) Dollars, to be applied as part of the purchase price for said real estate at the time of delivery of deed.

This proposition shall be treated as made to the owner of said property, and shall remain open for acceptance for the period of ten (10) days from this date and if accepted, the above amount is to apply as part of purchase price, and if refused same is to be refunded. If offer is accepted and we fail to complete the purchase of the real estate herein mentioned as provided herein, the amount of Three Hundred ($300.00) dollars will be forfeited to you."

The parties stipulated that Mandles complied with all the terms and conditions for the sale of the property as set forth in the agreement.

On August 8, Owens called Mandles and informed them that he and his wife had decided not to proceed with the purchase of the Mandle house—that they had found something they liked better

Mandles had cashed the earnest money check in the amount of $300.00 on August 1, 1972.

In the meantime, Mandles had paid $1,000 earnest money on another home and had made application for a loan thereon.

Mandles, having moved from Terre Haute to their new home in Maryland, advertised the Terre Haute property for sale after they were informed by Owenses that they would not take the property. They were unsuccessful and having a deadline to meet on the Maryland property, on August 28, listed the Terre Haute property with a Terre Haute realtor.

The property was sold for $29,500. A brokerage fee of $2,065 was paid the realtor. The Terre Haute property was refinanced and other expenses in the amount of $436.00 were incurred. Mandles also claim additional expenses for:

Motel _____$140.00
Telephone _____  15.00
Interest on loan _____ 150.17

The trial court entered its special findings of fact and conclusions of law thereon.

The findings set forth the provisions of the contract and they will not be re-copied here. Conclusions of law are as follows, to-wit:

"1. That the clause referred to in Finding Number 1 above is a liquidated damages clause which was intended by the parties as compensation for a breach of the contract by the buyers and was a good faith attempt on the part of the parties to estimate the damages which would probably flow from a breach thereof and is fair and reasonable and was intended by the parties to be the sole remedy in the event of the buyers' breach under the contract.

2. That the plaintiffs are estopped from claiming additional damages by reason of defendants' failure to perform the contract by accepting and retaining the earnest money deposit and proceeding to enter into a contract of sale for said premises with a third party.

3. That the plaintiffs sustained no recoverable damages by reason of the defendants' failure to complete the said sale.

4. That the law is with the defendants."

Judgment was entered for the defendants Owenses.

Specification 2 of the motion to correct errors is that the decision of the court is contrary to the evidence. This being a negative judgment no question is presented by this specification of error. *VerHulst* v. *Hoffman* (1972), 153 Ind. App. 64, 286 N.E.2d 214, 216.

Specification 1 is that the judgment is contrary to law. On appeal Mandles assert arguments attacking each conclusion of law as hereinabove set out, which arguments are contained in their motion to correct errors.

We shall group sub-sections (1), (2), and (3) and treat them as one, pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

The question of whether a contractual provision stipulating damages in the event of a breach is considered a valid liqui-

dated damages clause or a penalty which is unenforceable, is purely a question of law for the court. *Lettellier* v. *Abilene Flour Mills Co.* (1935), 101 Ind. App. 20, 198 N.E. 111; *Aldon Builders, Inc.* v. *Kurland* (1972), 152 Ind. App. 570, 284 N.E.2d 826, 833.

This court, in *Tudor* v. *Beath* (1921), 76 Ind. App. 526, at p. 528, 131 N.E. 848, said, in quoting from *Walker, Admr.* v. *Bement* (1911), 50 Ind. App. 645, 94 N.E. 339:

" 'It is not always easy to distinguish between a penalty and liquidated damages, but it has been generally held by the courts that when the damages likely to be occasioned by the breach are uncertain, and the sum fixed to be recovered on such breach is not grossly excessive or unjust, it will be treated as liquidated damages, *but if the damages likely to be occasioned by the breach are susceptible of certain proof, and the amount stipulated to be paid on such breach is in excess of that amount, it will be treated as a penalty.*' " (Our emphasis.)

This court went further to hold as follows:

"*This rule, however, is not applicable to a contract for the sale or exchange of real estate where the damages likely to arise on account of a breach are uncertain.* In such contracts it is proper for the parties in advance of a breach to estimate the damages consequent upon a breach and agree upon their measure. Such an agreement, when entered into in good faith, will be enforced.

The words 'damages,' 'penalty,' 'forfeiture,' and 'liquidated damages,' when used in such contracts, are not conclusive, but they will be duly considered in connection with all the other provisions of the contract in determining whether the stipulation as to damages, in case of a breach, shall be considered as a penalty or as liquidated damages. If upon the whole agreement the court can see that the sum stipulated to be paid was intended as a penalty, the designation of it by the parties as 'liquidated damages' will not prevent this construction; if, on the other hand, the intent is plain that the sum shall be 'liquidated damages,' it will not be treated as a penalty because the parties have called it by that name. *It is well settled, however, that if the event is at all doubtful, the tendency of the courts is in favor of the interpretation which makes the sum a penalty.*

*The presumption is that a lump sum named by the parties*

*to a contract is a penalty rather than liquidated damages. It is also held that where there are covenants of varied kinds and importance, and the sum named is payable for the breach of any, even the least, it is a penalty. Keck v. Bieber (1892), 148 Pa. 645, 24 Atl. 170, 33 Am. St. 846; Gower v. Saltmarsh (1848), 11 Mo. 271; Hathaway v. Lynn (1889), 75 Wis. 186, 43 N.W. 956, 6 L.R.A. 551. Other cases state the rule to be, if a gross sum is stipulated to be paid for any failure to fulfill an agreement consisting of several parts, and requiring several things to be done or omitted, it is a penalty. . . . (Cases cited omitted.)*

*Another rule which is almost universally recognized and acted upon is that where the payment of a smaller sum is secured by an agreement to pay a larger sum, the larger sum will be a penalty, and not liquidated damages. Krutz v. Robbins (1895), 12 Wash. 7, 28 L.R.A. 676, 50 Am. St. 871.*" (Our emphasis.)

In *Tudor,* this court, in quoting from Pomeroy, Equity Jurisprudence (2d ed.), §§ 441-444, in discussing the subject of penalties and forfeitures, said, at p. 531:

" '. . . *Fourth. Whether an agreement provides for the performance or non-performance of one single act, or of several distinct and separate acts, if the stipulation to pay a certain sum of money upon a default is so framed, is of such a nature and effect that it necessarily renders the defaulting party liable in the same amount at all events, both when his failure is complete, and when it is only partial, the sum must be regarded as a penalty, and not as liquidated damages.*' " (Our emphasis.)

Further, in *Tudor,* the court, quoting Clark, Contracts 411, stated:

" 'The real question in this class of cases will be found to be, not what the parties intended, but whether the sum is, in fact, in the nature of a penalty; and this is to be determined by the magnitude of the sum, in connection with the subject-matter, and not at all by the words or the understanding of the parties. The intention of the parties can not alter it. . . .'

This doctrine was in effect recognized in *Jaqua* v. *Headington* (1888), 114 Ind. 309, where it is said: '*The form of the instrument does not control, for the courts will look beyond that to the subject of the contract and to the consequences that will probably flow from a breach of its terms or conditions.*' " (Our emphasis.)

In the case at bar the contract provision set forth above does not explicitly denominate the sum of $300 as a penalty or as liquidated damages. The deposit of $300 is stated to be earnest money to be applied as part of the purchase price at the time of delivery of the deed to said real estate.

The contract between the parties stated the offer would remain open for acceptance for ten days from the date of the execution, and if accepted the amount of $300 was to apply on the purchase price and if the owner refused to deed said real estate, said sum was to be refunded to the purchasers. It is to be noted that the contract then stated if the offer was accepted and "we fail" to complete the purchase of the real estate the amount of $300 would be "forfeited to you."

This contract was prepared by the attorney for Owenses and it is our duty to construe the same strictly against the party whose attorney prepared it. *Lacy* v. *White* (1972), 153 Ind. App. 504, 288 N.E.2d 178, 183.

We find that we are unable to determine from the specific wording of the contract whether the $300 which was to be "forfeited" was to be considered as a penalty or as liquidated damages. Therefore, we consider the lump sum ($300) payable in the event of breach as a penalty. *Tudor* v. *Beath, supra.*

While liquidated damages may be proper in some cases involving real estate sales where damages are uncertain, such is not the case here. The greater part of the damages which resulted from the failure of Owenses to complete the contract were clearly and accurately shown by the evidence at trial. Given such reasonable certainty of proof, we must conclude that the $300 figure was at best arbitrary—there is nothing to show that the stipulated sum has any relation to anticipated loss.

Inasmuch as we have found the sum to be a penalty, it necessarily follows that the contract provision above was not intended as the sole remedy for breach.

We are of the further opinion that the trial court erred in its conclusion of law that Mandles were estopped from claiming damages in excess of the earnest money of $300 by accepting and retaining the earnest money deposit. Mandles were entitled to retain the $300 earnest money as the contract provided it would be applied as a part of the purchase price at the time of delivery. Mandles at the time of cashing the check stood ready and willing to deliver and were justified in cashing the check.

The remaining question is whether the Mandles sustained compensable injury by reason of the breach.

The record is that Mandles introduced their evidence in chief and rested and Owenses rested without the introduction of any evidence.

The evidence is most clear and convincing that Mandles sustained a loss of $500 on the sale of their property by a sale of $500 less than Owenses had contracted to pay. Mandles paid a realtor's commission of $2,065 which was made necessary by their incapacity to find a quick buyer, following Owenses' breach. The sum of $436 for expenses involved in refinancing the property is not clearly established by the record. Further, the expenses claimed for motel bill ($140), telephone bill ($15) and interest on a loan ($150.17), are not adequately substantiated by facts in the record as being a consequence of Owenses' breach of their contract.

We determine the court erred and the law is with the appellants-plaintiffs, Mandles.

Judgment reversed and cause remanded to the trial court with instructions to restate its conclusions of law in accordance with this opinion and to hear further evidence on the amount of damages sustained by Mandles in addition to the sum of $2,565.00 as the result of Owenses' breach of the contract and to give Owenses credit for the $300 earnest money payment paid to Mandles and render its judgment accordingly.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 330 N.E.2d 362.