William ROGERS and Lela G. Rogers,
Appellants–Defendants,

v.

Ronnie LOCKARD and Carla
M. Lockard, Appellees–
Plaintiffs.

No. 32A04–0107–CV–307.

Court of Appeals of Indiana.

May 8, 2002.

Daniel F. Zielinski, Deckard & O'Brien, Danville, Indiana, Attorney for Appellants.

William O. Harrington, William O. Harrington, P.C., Danville, Indiana, Attorney for Appellees.

## OPINION

SULLIVAN, Judge.

William and Lela Rogers appeal from the trial court's entry of default judgment against them and in favor of Ronnie and Carla Lockard. Upon appeal, the Rogerses present three issues for our review, which we restate as:

(1) whether the trial court erred in denying the Rogerses' motion to set aside the default judgment;

(2) whether the trial court erred in granting the Lockards' motion to modify their complaint to conform to the evidence; and

(3) whether the trial court erred in calculating the damages awarded to the Lockards.

We affirm in part, reverse in part, and remand with instructions.

The record reveals that the Lockards owned a residence located in Plainfield, Indiana. On March 6, 2000, the Rogerses signed a purchase agreement ("the Agreement") wherein they offered to buy the Lockards' home for $199,000 in cash. The Agreement provided that the Rogerses would pay $1,000 earnest money and take possession of the home within ten days of the closing date of April 21, 2000. The Lockards responded by tendering a counter-offer, which accepted the terms of the Agreement, provided that the Rogerses

pay an additional $5,000 earnest money by April 12, 2000. The Rogerses accepted and signed the counter-offer. In anticipation of the Rogerses buying their home, the Lockards entered into a lease agreement for another residence on March 17, 2000.

The Rogerses had recently been awarded a $2,600,000 judgment in an unrelated lawsuit and planned to use these funds to buy the Lockards' home. However, due to an appeal, there was a delay in the Rogerses' receipt of the award, and the Rogerses did not purchase the Lockard home on the closing date. Therefore, on April 21, 2000, the parties executed an addendum to the purchase agreement. The addendum extended the closing date to June 15, 2000, and provided that the Rogerses would pay $1,000 toward the Lockards' rent. When the Rogerses failed to purchase the home by the June 15, 2000 closing date, the Lockards again placed the home up for sale and eventually sold it for $187,000 on January 26, 2001.

On July 21, 2000, the Lockards filed a complaint against the Rogerses in the Hendricks Circuit Court alleging breach of contract and promissory estoppel. On July 26, 2000, the complaint and summons were served on the Rogerses via certified mail.[1] The Rogerses, however, failed to file an answer to the Lockards' complaint. Therefore, on August 24, 2000, the Lockards filed a motion for default judgment pursuant to Indiana Trial Rule 55. On August 28, 2000, the trial court granted the Lockards' motion and entered a default judgment in favor of the Lockards and set a hearing to determine damages for September 26, 2000.

Although the Rogerses were notified of the judgment and damages hearing, they failed to appear, and on September 26, 2000, the trial court awarded damages to the Lockards in the amount of $21,971.83. On September 27, 2000, the trial court granted the Lockards' motion for proceedings supplemental and set a hearing on the motion to be held on October 24, 2000. The Rogerses were notified of this hearing via certified mail. On October 2, 2000, the trial court granted the Lockards' motion to continue the supplemental hearing which was reset for November 28, 2000. The chronological case summary reveals that on October 4, 2000, the notice of judgment sent to the Rogerses on September 28, 2000, was returned because the Rogerses had moved and left no forwarding address. Subsequent notices were similarly returned. The case summary also indicates that on November 2, 2000, the Hendricks County Sheriff's Department personally served Lela Rogers with an order to appear in court for the November 28 hearing.

Thereafter, on November 15, 2000, the Rogerses' attorney filed an appearance and moved to continue the hearing, which was reset for January 3, 2001. On December 29, 2000, the Rogerses filed a motion to set aside the default judgment pursuant to Indiana Trial Rule 60. The trial court heard arguments on the motion to set aside the default judgment at the January 3 hearing. The day after the hearing, the trial court denied the Rogerses' motion to set aside the default judgment and scheduled another proceedings supplemental hearing for February 27, 2001.

During the hearing held on February 27, 2001, the Rogerses moved for a hearing on damages, and the trial court set a hearing thereon to be held on March 27, 2001. The Lockards filed an objection to this hearing on February 28, 2001, and after several motions and counter-motions, the trial court eventually held a hearing re-

1. *See* Ind. Trial Rule 4.1(A)(1); Ind. Trial Rule 4.11.

garding damages on June 6, 2001. During this hearing, the Lockards moved to amend their complaint to conform to the evidence pursuant to Indiana Trial Rule 15(B), which the trial court granted. On June 14, 2001, the trial court entered a "Judgment and Order of the Court" wherein it awarded the Lockards $35,120.50 in damages. On July 13, 2001, the Rogerses filed their notice of appeal.

## I

### Default Judgment

The Rogerses claim that the trial court erred in denying their motion to set aside the default judgment. Indiana Trial Rule 60(B) states, "On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons ... mistake, surprise, or excusable neglect." According to the Rogerses, their failure to respond to the Lockards' complaint was excusable neglect because they did not understand that they were being sued and were required to respond.[2]

■ The trial court's decision whether to set aside a default judgment is given substantial deference upon appeal. *Mason v. Ault,* 749 N.E.2d 1288, 1290 (Ind.Ct. App.2001), *reh'g denied, trans. denied.* We will reverse the trial court's decision only upon a showing of an abuse of that discretion. *Id.* A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and cir-

cumstances before the trial court, or if the trial court has materially misinterpreted the law. "The trial court's discretion is necessarily broad in this area because any determination of excusable neglect, surprise, or mistake must turn upon the unique factual background of each case." *Id.* Thus, no fixed rules or standards regarding default judgments have been established. *Id.* In reaching its decision, the trial court must balance the need for an efficient judicial system against our preference for deciding cases upon the merits. *Id.* We neither reweigh evidence nor judge witness credibility. *Id.* Nor will we substitute our judgment for that of the trial court. *Id.* The burden is on the movant to show sufficient grounds for relief from a default judgment. *Id.*

■ The summons served upon the Rogerses read in part as follows:

*"You have been sued by the person(s) named "plaintiff", in the court stated above.*

The nature of the suit against you is stated in the complaint which is attached to this document. It also states the demand which the plaintiff has made and wants from you.

*You must answer the complaint in writing, by you or your attorney, within twenty days (twenty-three days if received by mail) commencing the day after you receive complaint and summons, or judgment will be entered against you for what the plaintiff has demanded."* Appellee's Appendix at 1 (emphasis supplied).

---

2. At the hearing on the motion to set aside the default judgment, Lela Rogers claimed that she did not understand the summons and complaint served upon her and did not realize that she was being sued. The Rogerses' counsel also elicited from Lela that she had a tenth-grade education. Mr. Rogers admitted that he received the summons and complaint.

Mr. Rogers testified, however, that he did not think that he had been sued, but instead thought the documents were "more of a scare tactic to try to get me to come up with some money...." Transcript at 15. Mr. Rogers testified that he did not realize that he was required to respond within twenty days.

■ When asked if she realized that she was being sued after receiving the complaint and summons, Mrs. Rogers replied, "I think so." Transcript at 9. Mrs. Rogers also testified that her husband had been involved in a three-year lawsuit which resulted in a jury verdict and that they had retained a lawyer from Kentucky to assist them in that suit. Mr. Rogers' reason for not responding to the complaint was that he did not realize he was being sued when he received the complaint and summons because, "I didn't see a court date on them, I didn't see a map.…" *Id.* at 15. Mr. Rogers testified that he did call a "real estate lady" but did not contact a lawyer. *Id.* at 16. Mr. Rogers testified that he was fifty-five years old and could see and read the English language. Upon cross-examination, Mr. Rogers was asked, "So you didn't bother to read the language on [the summons] that said you must answer the complaint within twenty-three days or judgment will be entered against you, you didn't read that?" *Id.* at 20. Mr. Rogers replied, "No sir, I didn't." *Id.* Mr. Rogers also testified that he did not call the Kentucky attorney who had represented him in his previous lawsuit. "A person of mature years and judgment and this we will assume of appellant in the absence of any evidence to the contrary, may not idly ignore a summons to defend an action." *Mason,* 749 N.E.2d at 1292 (quoting *Carty v. Toro,* 223 Ind. 1, 7, 57 N.E.2d 434, 436 (1944)).

Based upon this evidence, we cannot say that the trial court abused its discretion in denying the Rogerses' motion to set aside the default judgment on grounds of excusable neglect. *See Mason,* 749 N.E.2d at 1292 (holding that neglect was not excusable where the defendants did not do all that they were required to do after they received the summons and complaint in that they did not contact a lawyer or make any other arrangements with respect to their defense); *Whitaker v. St. Joseph's Hosp.,* 415 N.E.2d 737, 744 n. 6 (Ind.Ct. App.1981) (noting that, in order to set aside a judgment, the circumstances must not be the result of any fault or negligence on the part of the movant). Here, the Rogerses simply chose to ignore the summons and complaint to their own detriment.

## II

### *Trial Rule 15(B)*

■ At the damages hearing, the Lockards attempted to introduce evidence of losses they suffered when the Rogerses failed to purchase certain furniture within the home.[3] The purchase agreement contained no provisions for the purchase of furniture, and the Lockards' pleadings made no mention of any such agreement. The Rogerses objected to this evidence on the basis that the issue before the court was damages relating to the default judgment on the breach of the purchase agreement, not a separate agreement to buy furniture. The Lockards then moved to amend their pleadings to conform to the evidence pursuant to Indiana Trial Rule 15. The trial court admitted the evidence regarding the furniture, and the final award included damages resulting from the Rogerses' failure to purchase the furniture.

Trial Rule 15(B) provides means by which a pleading may be amended to conform to the evidence:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had

---

**3.** At this hearing the trial court in effect reopened the issue of the damages to be awarded because earlier the court had entered judgment for $21,971.83.

been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.* The court may grant a continuance to enable the objecting party to meet such evidence." Ind. Trial Rule 15(B) (emphasis supplied).

 The rationale underlying Rule 15(B) is to promote relief for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings. *Bank of New York v. Bright,* 494 N.E.2d 970, 974 (Ind.Ct.App. 1986). As noted by this court in *Bright,* Rule 15(B) embodies two distinct procedures. *Id.* The first applies when the parties either expressly or impliedly consent to the trial of issues not embraced within the pleadings; the second procedure applies when a party objects on the ground that the proffered evidence is outside the issues framed in the pleadings. *Id.* Here, because the Rogerses objected to the admission of the evidence as being outside the pleadings, they did not consent to the insertion of the new issue. Thus, we must address ourselves to the latter portion of Rule 15(B).

Generally, if amending the pleadings would aid in the presentation of the merits of the case, the objecting party must dem-

onstrate to the trial court that they have been actually prejudiced in their defense before the court should disallow such amendments. *See* T.R. 15(B); *Bright,* 494 N.E.2d at 974. "This means that the objecting party will be put to some serious disadvantage . . ., and it is not enough that an imagined grievance appears, or some tactical advantage is lost." 2 WILLIAM F. HARVEY, INDIANA PRACTICE § 15.4 at 63 (3d ed.2000); *Bright,* 494 N.E.2d at 974. Here, although the trial court did not make any explicit ruling regarding any prejudice the Rogerses would suffer if the amendment were allowed, the evidence relating to the oral contract was admitted over their objection. Thus, the trial court impliedly ruled that the Rogerses had not established that they had been actually prejudiced as a result of the amendment. We cannot agree.

The June 6 hearing was not a trial upon the issue of whether the Rogerses had breached the purchase agreement. It was instead a damages hearing upon the default judgment which had already been entered. Although we might envision a situation in which a trial court might properly allow a party to amend the pleadings during a damages hearing subsequent to a default judgment, effectively holding a bifurcated inquiry—the proper amount of damages on the default judgment and the existence and extent of liability on the second issue, this does not appear to be what happened here.

Here, the trial court gave no indication that it was holding a separate trial on the oral agreement. Instead, it referred to the proceedings as a hearing on damages and noted that the Rogerses had "been defaulted." Transcript at 73. Although a default judgment had been entered with regard to the written real estate contract, no judgment of any kind had been entered against the Rogerses with regard to the

parol agreement regarding the sale of the furniture. In effect, the Lockards were able to use the entry of default judgment upon the real estate contract in order to present evidence of damages that resulted from the breach of a separate contract.

■ Neither do we agree with the Lockards' contention that the Rogerses had sufficient notice that the issue of the oral contract would be litigated at the damages hearing. As noted above, the Lockards' complaint makes no mention of an agreement to purchase furniture. "Fairness requires that the opposing party have 'some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order.'" *Wampler v. Tusing*, 711 N.E.2d 533, 535 (Ind.Ct.App.1999) (quoting *Apple v. Kile*, 457 N.E.2d 254, 256 (Ind.Ct.App. 1983)). We do not agree with the Lockards that by requesting a transcript of the first damages hearing the Rogerses received sufficient notice of this issue. The Lockards claim that Mr. Rogers testified at the first damages hearing regarding the furniture. However, Mr. Rogers did not testify regarding furniture at the original damages hearing. In fact, the Rogerses did not appear at the first damages hearing. It was Mr. Lockard who testified regarding the furniture at the first hearing, and he mentioned it only in one sentence. The Rogerses did not receive adequate notice from their receipt of the transcript.

Thus, we are of the mind that the Rogerses did indeed demonstrate that they were prejudiced in their defense because they were effectively denied the opportunity to present any defense as to the oral agreement.[4] We therefore reverse the trial court's award of damages to the Lockards and remand with instructions to reduce the award by $4,796.47, the amount submitted by the Lockards as the damages they suffered as a result of the Rogerses' failure to purchase the furniture.[5]

## III

### *Damages*

#### *A. Liquidated Damages*

The Rogerses claim that the trial court improperly placed the Lockards in a better position than they would have been had the contract not been broken, and that the Lockards' recovery should be limited to their loss actually suffered. *See Sheppard v. Stanich*, 749 N.E.2d 609, 611 (Ind.Ct. App.2001); *Stoneburner v. Fletcher*, 408 N.E.2d 545, 550 (Ind.Ct.App.1980). The Rogerses, however, point to no evidence that the trial court's award of damages put the Lockards in a better position or compensated them for losses which they did not suffer as a result of the breach of contract. Despite this deficiency, we are concerned by the following language contained in the Agreement: "If this offer is accepted and Buyer fails or refuses to close the transaction, without legal cause, the earnest money shall be forfeited by Buyer to Seller as *liquidated damages, and Seller may pursue any other legal and equitable remedies.*" Appellant's Appendix at 12 (emphasis supplied).

---

**4.** Mr. Rogers did testify at the second hearing that the agreement to buy the furniture was conditional upon his receiving the money from his separate lawsuit. However, the trial court had already decided to allow evidence regarding the oral contract, and it cannot be said that they consented to the trial of the issue of damages appropriate for the breach of a conditional agreement relative to the furniture.

**5.** The trial court accepted Plaintiff's Exhibit 11 as the correct amount of damages, with the exception of the amount listed for real estate property tax.

 The term "liquidated damages" applies when a specific sum of money has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by either party for a breach of the contract by the other. *Merrillville Conservancy District v. Atlas Excavating, Inc.*, 764 N.E.2d 718, 724 (Ind. Ct.App.2002). See also 22 AM.JUR.2D *Damages* § 683 (1988) (defining liquidated damages as a sum which the parties have agreed, at the time of entering into a contract, as being payable to satisfy any loss or injury flowing from a breach of the contract). Liquidated damages provisions have value and are generally enforceable in those situations where the calculation of actual damages would be uncertain, difficult, or impossible.[6] 22 AM.JUR.2D *Damages* § 683 (1988); *Gershin v. Demming*, 685 N.E.2d 1125, 1127 (Ind.Ct.App.1997). In general, liquidated damages are *the* amount of damages to be recovered by the non-breaching party. *Atlas Excavating*, 764 N.E.2d at 724. The description of a deposit as "liquidated damages" in the event of a breach has been held to indicate the parties' intention to limit their recovery to *only* the amount of the stated liquidated damages. *Beck v. Mason*, 580 N.E.2d 290, 293 (Ind.Ct.App.1991).

 Yet the contractual language in the present case states that, in addition to the forfeiture of the earnest money as liquidated damages, "Seller may pursue any other legal and equitable remedies." Appellant's App. at 12. A provision calling for the collection of both "liquidated damages" in addition to "legal remedies" would appear to be inconsistent, as one's legal remedy is generally the collection of money. In such a case, the "liquidated damages" would not be truly liquidated, but a forfeiture or penalty.[7]

 In *Beck*, the court held that unambiguous liquidation clauses should be given effect. Here, however, there is an ambiguity in the contractual language resulting from the language calling for both liquidated damages and other remedies. If an ambiguity arises because of the contractual language and not because of extrinsic facts, construction of the contract is a question of law to be resolved by the court. *Atlas Excavating*, 764 N.E.2d at 724. An ambiguous contract should be construed against the party who drafted it.[8] *Id.*

---

6. A provision for liquidated damages would generally not seem to be appropriate in a contract for the sale of real estate. As set forth below, a simple measure of damages in such cases may be arrived at by calculating the difference between the sale price of the property to be sold and the fair market value of the property at the time of the buyer's breach. *See Showalter, Inc. v. Smith*, 629 N.E.2d 272 (Ind.Ct.App.1994), *trans. denied, questioned on other grounds by Mitchell v. Mitchell*, 695 N.E.2d 920 (Ind.1998). Thus, in most real estate purchase agreements, a measure of damages should be readily ascertainable. *But see Tudor v. Beath*, 76 Ind.App. 526, 131 N.E. 848 (1921) (stating that, in a contract for the sale or exchange of real estate, liquidated damages were proper because the damages likely to arise from breach of such a contract are uncertain).

7. It is also unclear if a non-breaching party could collect liquidated damages and also pursue equitable remedies. Equitable relief is appropriate only where legal remedies are inadequate. *See Martin v. Heffelfinger*, 744 N.E.2d 555, 558 (Ind.Ct.App.2001). A federal court, interpreting Indiana law, has held that a liquidated damages clause did not bar an action for specific performance or the contract price. *Fletcher v. United States*, 303 F.Supp. 583 (N.D.Ind.1967), *aff'd and adopted by* 436 F.2d 413 (7th Cir.1971).

8. At the damages hearing, there was conflicting evidence regarding who drafted the purchase agreement. The buyers claimed that the sellers prepared the agreement. However, the purchase agreement was tendered by the Rogerses to the Lockards, who responded with a counter-offer which increased the ear-

The question before us then becomes whether this is a true liquidation clause, which would limit the Lockards' recovery, or a forfeiture or penalty clause, which should not be enforced. *See 2625 Building Corp. v. Deutsch,* 179 Ind.App. 425, 385 N.E.2d 1189 (1979) (forfeitures disfavored by law); *Jeffries v. Lesh,* 195 Ind. 503, 144 N.E. 881 (1924) (amount specified was in the nature of a forfeiture or penalty, which will not be enforced).

■■■■ The use of the words "damages," "penalty," "forfeiture," and "liquidated damages" are not conclusive, but should be considered in connection with other provisions in the contract to determine the nature of the provision. *Mandle v. Owens,* 164 Ind.App. 607, 611, 330 N.E.2d 362, 364–65 (1975), *trans. denied; see also Atlas Excavating,* 764 N.E.2d at 724 n. 3 (noting that interpretation of a contract provision cannot be controlled by erroneous labels, including the erroneous use of the term "liquidated damages," but instead the court must look through form to substance). The distinction between a penalty provision and a liquidated damages provision is that a penalty is imposed to secure performance of the contract, and liquidated damages are to be paid in lieu of performance. *Gershin,* 685 N.E.2d at 1128. Although we are usually tolerant of provisions within contracts which provide for liquidated damages, if the sum sought to be fixed is grossly disproportionate to the loss which may result from breach, we should treat the sum as a penalty rather

than liquidated damages.[9] *Id.* There are no hard and fast guidelines to follow in such cases, and the question is one of pure law. *Id.*

■■■ In the case at bar, the language of the Agreement characterizes the forfeiture of the earnest money as "liquidated damages." In *Beck,* the court relied heavily on the description of the deposit in that case as liquidated damages in holding that the parties "intended to so limit their remedies." 580 N.E.2d at 293. However, *Beck* is distinguishable from the present case.

In *Beck,* the buyers signed an agreement to purchase the sellers' home and made a $1,000 deposit on the property. The purchase agreement stated, "Should Purchaser fail to complete said sale for any reason other than defective title, or because Purchaser's loan is refused, the deposit shall be retained by seller as liquidated damages and not as a penalty or forfeiture." *Id.* at 291. The buyers informed the sellers that their loan had been denied, which was false, and asked for the return of the deposit. When the sellers discovered the truth, they kept the deposit, and the buyers sued for its return. The sellers counterclaimed to collect over seven thousand dollars in actual damages and claimed that their receipt of the $1,000 liquidated damages deposit did not limit them from collecting the balance of their damages. The *Beck* court held that a "liquidated damages" clause does not per se restrict a party from recovering additional

---

nest money by $5,000. Thus, it would appear that the agreement was "drafted" by the buyers in this sense. It should be noted, however, that the purchase agreement was a form contract which originated with the Indiana Association of Realtors, and there were apparently no attorneys involved at this point.

**9.** We note that in the present case, if the Lockards were to be limited to the collection

of liquidated damages alone, their recovery would be less than the actual damages which resulted from the breach. A similar situation existed in *Mandle,* but the court still concluded that the forfeiture of the earnest money was a penalty. 164 Ind.App. at 613–14, 330 N.E.2d at 366. *But see Mandle v. Owens,* 265 Ind. 252, 353 N.E.2d 465 (1976) (Hunter, J., dissenting to denial of transfer).

damages.[10] *Id.* at 293. Nevertheless, the *Beck* court held that the parties there expressly designated the deposit as liquidated damages rather than as a penalty or forfeiture, and although not conclusive, this suggested the intent of the parties to limit their remedy to the recovery of liquidated damages. *Id.*

In another similar case, *Mandle,* the buyers agreed to purchase the sellers' home for $30,000, and made an earnest money deposit in the amount of $300. The contract in that case stated, "if offer is accepted and we fail to complete the purchase of the real estate herein mentioned as provided herein, the amount of Three Hundred ($300.00) dollars will be forfeited to you." 164 Ind.App. at 609, 330 N.E.2d at 363. The buyers later informed the sellers that they would not take the property, and the sellers later sold the home for $29,500, with a $2,065 brokerage fee paid to the realtor. In addition to the brokerage fee and the difference between the contract and selling price, the sellers also claimed $436 in refinancing costs, plus expenses for motel rent, telephone, and interest. The *Mandle* court struggled with the question of whether the contract called for a penalty or liquidated damages, stating that they were "unable to determine from the specific wording of the contract whether the $300 which was to be 'forfeited' was to be considered as a penalty or as liquidated damages. Therefore, we consider the lump sum ($300) payable in the event of breach as a penalty." 164 Ind.App. at 613, 330 N.E.2d at 366.

▬▬▬ Thus, where there is uncertainty as to the meaning of the provision, classification as a penalty is favored. See 164 Ind.App. at 611–12, 330 N.E.2d at 365. In the present case, however, unlike in

*Mandle,* the term liquidated damages was specifically used. This would appear to favor following the reasoning of the court in *Beck,* which limited recovery to such. However, in *Beck,* the contract, unlike the one here, did not state that the seller "may pursue any other legal and equitable remedies." To limit the Lockards' recovery would effectively render this language meaningless. We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Barrington Mgmt. Co., Inc. v. Paul E. Draper Family Ltd. Partnership,* 695 N.E.2d 135, 140 (Ind.Ct.App.1998).

There are indications that the parties did not intend to limit recovery to the liquidated damages. Foremost among these is the above-mentioned language stating that the Lockards could pursue other legal and equitable remedies. This strongly suggests an intention not to limit recovery. Here, the Agreement does not give the Lockards a choice of liquidated damages or other legal remedies, but instead says buyer "forfeits" the earnest money *and* the seller may pursue other legal and equitable remedies. If this were allowed, and that is what actually happened here, then the forfeiture of the earnest money acts as a punishment for breach of the contract, and not as an estimation of the actual damages. Thus, the "liquidated damages" were in fact a penalty and should not be recoverable.

Another factor favoring the conclusion that the clause here is not a true liquidation clause involves the ease of determining actual damages. As noted above, liquidated damages are usually most useful where actual damages would be difficult to

---

**10.** Although in such cases where the damages were not limited, the forfeited money would

not then be "truly liquidated." *See id.* at 294.

ascertain. 22 Am.Jur.2d *Damages* § 683 (1988); *Gershin,* 685 N.E.2d at 1127. Despite the language contained in *Tudor v. Beath,* 76 Ind.App. 526, 131 N.E. 848 (1921), suggesting otherwise, damages in cases of breach of real estate contracts do not appear to be particularly difficult to ascertain. *See* note 6, *supra.* Here, the Lockards seemed able to adequately ascertain their actual damages.[11]

In summary, we hold that the provision in the Agreement for the collection of "liquidated damages" was an unenforceable penalty or forfeiture, and the trial court should have limited the Lockards' recovery to their actual damages. We therefore reverse the trial court's calculation of damages and remand with instructions to reduce the amount awarded to the Lockards by $6,000, representing the penalty or forfeiture which we have held void.[12]

### B. Consequential Damages

■ Having determined that the Lockards were not limited to recovery of "liquidated damages," we now turn to the question of the proper determination of damages. The Rogerses claim that the trial court's inclusion of consequential damages in the Lockards' award was error. The Rogerses acknowledge the general rule that consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made. *See Marathon Oil Co. v. Collins,* 744 N.E.2d 474, 482 (Ind.Ct.App.2001). This rule follows that set forth in *Hadley v. Baxendale,* 156 Eng. Rep. 145 (1854), generally limiting consequential damages to reasonably foreseeable economic losses. *Johnson v. Scandia Assocs., Inc.,* 717 N.E.2d 24, 31 (Ind.1999). However, relying upon *Hill v. Hess,* 94 Ind.App. 399, 178 N.E. 241 (1931), and *Showalter,* 629 N.E.2d at 275–76, the Rogerses claim that there is a "more specific" means of determining damages for the breach of a contract for real estate. Appellant's Brief at 11. The Rogerses claim that in contracts for the purchase of real estate, the non-breaching party should recover only the difference between the sale price of the property to be sold and the fair market value of that property at the time of the buyer's breach. After reviewing these cases, we cannot agree with the Rogerses' contentions.

In *Hill,* the parties entered into a contract for the purchase of real estate. The buyers refused to accept the vendors' conveyance, and the vendors brought suit alleging breach of contract. The contract at issue in *Hill* included terms regarding the parties' responsibilities to pay for insur-

---

11. They did, however, erroneously list damages relating to the separate contract regarding the sale of furniture and improperly include the recovery of the forfeited earnest money in addition to actual damages.

12. The Rogerses claim that they paid $2,000 in earnest money, and that this should be deducted from their proposed damage amount of $12,000 for a total of $10,000. Although the Rogerses did submit $1,000 in earnest money, the other $1,000 was paid to the Lockards to cover their rent of another home, and was not designated as earnest money. Appellee's App. at 37.

The damage award appears to contemplate that the Lockards will retain the $1,000 earnest money actually paid by the Rogerses. The award does not, therefore, include this $1,000. It does include the additional $5,000 earnest money under the accepted counteroffer, but which amount was never paid by the Rogerses. The amount awarded to Lockards must be reduced by the $5,000 to which they are not entitled as "liquidated damages," and the Rogerses are entitled to credit for the $1,000 portion of the "liquidated damages" paid by them and retained by Lockards.

ance premiums and taxes. Certain fixtures were included in the purchase price. The *Hill* court reasoned that the plaintiffs were entitled to $500 in damages—the difference between the contract price of $8,250 and the fair market value of the property, $7,750. There is no indication that the plaintiff in *Hill* sought consequential damages, nor did the court mention them.

In *Showalter*, the defendant breached a contract for the purchase of a summer camp property. In addition to awarding the plaintiff $25,000, the difference between the contract price and the fair market value, the trial court awarded $29,309.08 in consequential damages for interest paid by the seller on debts he testified he would have paid off had the contract not been breached. Upon appeal, the *Showalter* court noted that an award of consequential damages may not be based upon mere speculation or conjecture and that the court could only speculate as to whether the seller would have indeed paid off the debts with the proceeds from the sale of the camp property. 629 N.E.2d at 276. The *Showalter* court also held that the trial court's award of $4,000 in consequential damages relating to maintenance and operation of the camp was improper because the record indicated that part of this amount included the replacement cost of equipment which the seller continued to own. The court then remanded the cause for a re-determination of the consequential damages.[13]

From these cases, we cannot agree with the Rogerses that consequential damages are improper in the context of a breach of a contract for the purchase of real estate. As noted above, the *Hill* case makes no mention of consequential damages. And the implication of the *Showalter* holding is

that some consequential damages might have been proper. Therefore, we see no reason why the general rule for consequential damages resulting from breach of contract should not apply. *Cf. Stoneburner v. Fletcher*, 408 N.E.2d at 551 (holding that where the customary measure of damages for a vendor's failure or refusal to convey land was inapplicable, the measure of damages must be flexible enough to vary with the necessities of the situation).

The Rogerses further note that "nowhere in the contract was the reimbursement of lease payments, utilities, lawn care, homeowners insurance premium or furniture contemplated should ... the transaction did [sic] not close." Appellant's Brief at 14. However, the Agreement does allow "other legal and equitable remedies" to be recovered. Appellant's App. at 12. Thus, although the language of the contract does not specifically provide for the recovery of consequential damages, neither does it prohibit such. Therefore, we hold that the trial court did not err in awarding the Lockards consequential damages as a result of the Rogerses' breach of the real estate purchase agreement.

*Conclusion*

The trial court did not err by denying the Rogerses' motion to set aside the default judgment. However, the trial court did err by permitting the Lockards to amend their pleading to include damages which stemmed from a separate oral contract to purchase furniture. The trial court did not err by awarding the Lockards consequential damages, but the trial court should not have awarded the forfeited earnest money in addition to actual damages. We hereby instruct the trial

---

13. In dissent, Judge Shields stated that the entire consequential damage award should be affirmed because the damages disapproved by the majority were not speculative.

court to award the Lockards a total of $24,324.03.[14]

The trial court's judgment is affirmed in part, reversed in part, and the cause is remanded for proceedings consistent with this opinion.

KIRSCH, J., and ROBB, J., concur.

---

14. This amount represents the $35,120.50 awarded by the trial court less the $4,796.47 awarded as the damages resulting from the Rogerses' failure to purchase the Lockards' furniture and the $6,000 improperly awarded as liquidated damages.