**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
Jul 23 2014, 6:31 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**TIMOTHY J. LEMON**
Knox, Indiana

ATTORNEY FOR APPELLEE:

**BARRY T. EMERSON**
Emerson & Manahan
Delphi, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

ADAM TRUSTY and
BRITTANY TRUSTY,

    Appellants-Defendants,

       vs.

DAVID L. HOOD,

    Appellee-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)

No. 08A05-1309-CC-466

---

APPEAL FROM THE CARROLL CIRCUIT COURT
The Honorable Benjamin A. Diener, Judge
Cause No. 08C01-1206-CC-114

---

**July 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Adam and Brittany Trusty appeal from the trial court's order in an action brought against the Trustys by David L. Hood alleging breach of a contract to sell residential real estate. They contend that the trial court erred by failing to treat the earnest money as liquidated damages, that there was inadequate proof of repairs to support the judgment, and that attorney fees should not have been awarded. Concluding that the Trustys have not established that the trial court erred by enforcing the contract against them, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

Hood agreed to sell his residence at 12346 West Sleepy Hollow Road in Monticello, Indiana, to the Trustys. After extensive negotiations, Hood and Adam entered into a written purchase agreement for the sale of the real estate for the purchase price of $113,000.00. In addition to the real estate, certain personal property was to remain. The Trustys had the property inspected, and repairs were made to the property. The purchase agreement was amended one last time, the closing date was set for October 7, 2011, and the Trustys were to take possession of the property on October 8, 2011. The closing date and the date of possession were adjusted to accommodate the Trustys.

Hood's realtor, Cindy Bland, received a telephone call from the Trustys' realtor, Joan Abbott, informing Bland that Adam's father had passed away, and that the Trustys were still planning on closing on the property, but needed to change the closing date. The realtors agreed to move the closing date to October 11, 2011. In a subsequent telephone call, Abbott told Bland that she was not sure the Trustys would be present for the closing.

2

A mutual release of purchase agreement signed by the Trustys and dated October 10, 2011, was sent to Bland. Hood rejected the release and hired an attorney to send a notice of default of the purchase agreement to the Trustys. The Trustys did not respond to the letter.

The purchase agreement signed by the Trustys provided the following in the event of a default:

> DEFAULT. In the event this Agreement is accepted and either party shall, without legal cause, fail or refuse to complete the transaction in accordance with the terms and conditions of this Agreement; the non-defaulting party may pursue all legal or equitable remedies available under the law, and shall be entitled to all court costs and reasonable attorney's fees, and said Earnest Money Deposit shall be held, retained or released by Listing Broker under the listing contract with Seller and the Earnest Money Deposit paragraph of this Agreement.

*Plaintiff's Ex.* 2 at 3. The purchase agreement also had an earnest money deposit provision, which reads as follows:

> EARNEST MONEY DEPOSIT. As Earnest Money, Purchaser deposits herewith $500.00 with Selling Broker by check which shall be applied to the purchase price (or closing costs in the event of 100% financing) at closing. All money paid herewith shall be held by Selling Broker until the acceptance of this Agreement and shall be transmitted to Listing Broker immediately upon such acceptance. If Purchaser fails for any reason to submit earnest money, as agreed, Seller may terminate this Agreement. Earnest money shall be returned promptly in the event this offer is not accepted. The Broker holding any earnest money is absolved from any responsibility to make payment to the Seller or Purchaser unless the parties enter into a Mutual Release or a Court issues an Order for payment, except as permitted in 876 IAC 1-1-23 (release of earnest money). Upon notification that Purchaser or Seller intends not to perform, Broker holding the earnest money may release the earnest money as provided in this Agreement. If no provision is made in this Agreement, Broker may send to Purchaser and Seller notice of the disbursement by certified mail. If neither Purchaser nor Seller enters into a mutual release or initiates litigation within sixty (60) days of the mailing date of the certified letter, Broker may release the earnest money to the party

identified in the certified letter. Purchaser and Seller agree to hold the Broker harmless from any liability, including attorney's fees and costs, for good faith disbursement of earnest money in accordance with this Agreement and licensing regulations.

*Id.*

Hood continued to list his property for sale through a real estate network. The listing price was reduced from $129,000.00 to $119,000.00. Bart Hickman assumed realtor duties for Hood and actively marketed the property. In March 2012, Hood received the only offer to purchase his property for $98,000.00. In the course of maintaining the property for this subsequent sale, Hood incurred additional expenses, including tasks that were FHA requirements, an inspection required by the buyer, and upkeep expenses. Hood also incurred legal costs and attorney fees due to the default of the purchase agreement with the Trustys. Hood testified about the efforts made by his attorney in handling the matter and his attorney submitted an affidavit attesting to the time and effort spent earning the fee.

The $500.00 earnest money was transferred from the Trustys' realtor, Abbott, to Hood's realtor, Real Estate Network, pursuant to the terms of the purchase agreement. At the time of trial, Real Estate Network retained the earnest money.

Hood filed a complaint for damages alleging breach of contract to sell residential real estate against the Trustys. The trial began on July 26, 2013, after which the trial court took the matter under advisement, allowing the parties to file proposed findings of fact and conclusions thereon. After considering the parties' submissions and arguments, the trial court entered detailed findings of fact and conclusions thereon, entering judgment in favor of Hood. The Trustys now appeal.

**DISCUSSION AND DECISION**

In this case, the trial court asked the parties to submit proposed findings and then entered findings of fact and conclusions thereon on its own motion. When a trial court enters such findings, *sua sponte*, under Indiana Trial Rule 52, the specific findings control only as to the issues they cover, and a general judgment standard applies to any issue upon which the trial court has made no findings. *Apter v. Ross*, 781 N.E.2d 744, 751 (Ind. Ct. App. 2003). The trial court's specific findings will not be set aside unless they are clearly erroneous, and we will affirm the trial court's general judgment on any legal theory supported by the evidence. *Id.* A finding is clearly erroneous when no facts or inferences drawn therefrom support the finding. *Id.* On review, we neither reweigh the evidence nor reassess the credibility of witnesses. *Id.* Instead, we consider only the evidence and reasonable inferences from the evidence that support the finding. *Id.* "We owe no deference to a trial court, however, on matters of law, reviewing these *de novo*." *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011).

Generally, the construction of a written contract is a question of law for the trial court, whose decision we review *de novo*. *Jenkins v. South Bend Cmty. Sch. Corp.*, 982 N.E.2d 343, 347 (Ind. Ct. App. 2013). "A long-standing principle of contract interpretation is that a court on review must accept an interpretation of a contract that harmonizes all the various parts, so that no provision conflicts with, is repugnant to, or neutralizes any other contractual provision." *Id.* at 348.

We are asked to review the trial court's finding and conclusion that the residential purchase agreement contained a penalty provision and not a liquidated damages clause.

5

"The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance." *Dean V. Kruse Found., Inc. v. Gates*, 973 N.E.2d 583, 591 (Ind. Ct. App. 2012). Liquidated damages clauses provide for the forfeiture of a stated sum of money upon a breach of contract without proof of damages and are generally enforceable where the nature of the agreement is such that damages for breach would be uncertain, difficult, or impossible to ascertain. *Id*.

The Trustys contend that Hood kept the earnest money. However, the evidence presented at trial established that the earnest money was retained by Hood's realtor. The residential purchase agreement provided that the seller's realtor was to hold the earnest money unless the parties entered into a mutual release or the trial court issued an order for payment. At the conclusion of the trial, the trial court ordered the transfer of the earnest money, which was held in escrow, to Hood's attorney.

The Trustys also contend that the earnest money constituted liquidated damages such that Hood could not recover damages beyond the $500.00 earnest money paid by them. In *Dean v. Kruse*, we set forth certain factors for consideration in determining whether a provision constitutes a penalty or a liquidated damages clause, including how the provision is labeled, but acknowledged that there "are no hard and fast guidelines to follow." 973 N.E.2d at 591-92. Those factors include a consideration of whether there is an intent to penalize the purchaser for a breach or if there is an intent to compromise, the proportion of the amount claimed as liquidated damages with the amount of the loss likely

6

to occur if there is a breach of the agreement, and whether the damages are ascertainable or certain in the event of a breach. *Id*. at 591-93.

Applying those factors to the provision here, the trial court correctly found that the earnest money was to serve as a penalty in the event of a breach. The earnest money amount was grossly disproportionate to the actual damages, which were certain and ascertainable. "[I]n most real estate purchase agreements, a measure of damages should be readily ascertainable." *Id*. at 594 (quoting *Rogers v. Lockard*, 767 N.E.2d 982, 990 n.6 (Ind. Ct. App. 2002)). "The measure of damages in a breach of real estate contract is the difference between the sale price of the property to be sold and the fair market value of the property at the time of breach." *Id*. "The price paid by a subsequent purchaser following the breach may also be admissible as evidence of the property's fair market value." *Id*. The contract price for the property was $113,000.00 and the subsequent purchase price was $98,000.00. Hood also submitted evidence of the cost to maintain the property in the interim. Thus, the damages were readily ascertainable, and the earnest money, $500.00, was grossly disproportionate to the actual damages. The trial court's decision is not clearly erroneous.

The Trustys also argue that they were not in breach of the residential purchase agreement because there was no evidence that Hood corrected the unacceptable items after the property was inspected. The evidence adduced at trial established that Hood agreed to correct all items on the unacceptable summary report from the inspection except one item. The Trustys agreed in writing with Hood's proposal for the corrections. Bland testified that all the repairs were completed, and the property was ready for the October 11, 2011,

closing date. The Trustys' realtor testified that to her knowledge the repairs were completed and that the repairs would have been easy to confirm during a walk through. The walk through was never completed, however, because the Trustys were not present for the closing.

There is no evidence in the record to establish that an alleged failure to complete the repairs was the cause of the breakdown in the real estate purchase agreement. Instead, the evidence reflects that the Trustys failed to close on the property because Adam's father passed away suddenly, and they did not wish to leave Adam's mother alone. To that end, they instructed Abbott to forward a mutual termination of the purchase agreement to Bland. Therefore, the trial court's conclusion that the Trustys were in breach of the real estate purchase agreement is not clearly erroneous and is supported by the evidence.

Although the Trustys contend that Adam's father's death should excuse their breach of the agreement, and allow for equitable principles to apply, such does not constitute a "legal cause" to terminate the contract. The Trustys entered into a contract, the terms of which proved more onerous than they anticipated. However, the parties were bound by the contract, and the trial court did not err in enforcing the terms of the contract.

The Trustys assert that the costs and attorney fees assessed against them were not reasonable. In particular, the Trustys argue that an award of $6,597.00 in attorney fees and costs was excessive given the fact that the matter was tried to the bench and took only a little more than two hours to complete. The Trustys, however, offer no evidence as to what constitutes a reasonable fee.

8

Here, the unambiguous language of the residential purchase agreement provided that "the non-defaulting party may pursue all legal or equitable remedies available under the law, and shall be entitled to all court costs and reasonable attorney fees, and said Earnest Money Deposit shall be held, retained or released by Listing Broker under the listing contract. . . ." *Plaintiff's Ex.* 2 at 4. The evidence reflects that the Trustys defaulted on the residential purchase agreement, and Hood rejected entering into a mutual release. Hood testified that he worked with his attorney on most of the forty hours billed at a rate of $150.00 per hour. That amount was supported by an affidavit signed by Hood's counsel attesting to the amount and reasonableness of the fee.

"It is well established that parties are permitted to enter into agreements containing fee-shifting provisions as long as the provision does not violate public policy." *Gerstbauer v. Styers*, 898 N.E.2d 369, 379 (Ind. Ct. App. 2008) (quoting *Walton v. Claybridge Homeowners Ass'n, Inc.*, 825 N.E.2d 818, 824-25 (Ind. Ct. App. 2005)). The trial court has broad discretion in assessing attorney fees, and that decision will be reversed only if the award is clearly against the logic and effect of the facts and circumstances before the trial court. *Id*. at 378. An abuse of discretion also occurs if the trial court misapplies the law. *Id*.

Here, the contract contemplated an award of attorney fees if one of the parties was required to enforce legal rights. An award of attorney fees pursuant to an agreement between the parties accomplishes the goal of more fully compensating a party who has successfully enforced his or her legal rights in court. *Id*. at 379. The Trustys defaulted on the purchase agreement in October of 2011, and Hood's complaint was filed on June 21,

9

2012.  The matter continued through a bench trial held on July 26, 2013.  In preparation for that trial, Hood's attorney was required to review the purchase agreement, interview the witnesses, document the evidence, and research the legal issues in preparation for trial.  The attorney billed Hood for forty hours at a rate of $150.00 an hour.  That attorney had thirty-five years of experience.  In light of the time and effort required, the value of the interests involved, and the experience, reputation, and ability of the attorney performing the services, the trial court did not abuse its discretion in making the award of attorney fees and costs.

Affirmed.

BAILEY, J., and CRONE, J., concur.