Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 24 2014, 10:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RONALD WILSON**
Rushville, Indiana

ATTORNEYS FOR APPELLEE:

**TAMMY DAVIS**
Brookville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID ROBERTS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 21A01-1403-ES-140 |
| | ) | |
| ESTATE OF BERTHA ROBERTS, DECEASED | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE FAYETTE CIRCUIT COURT
The Honorable Beth A. Butsch, Judge
Cause No. 21C01-1110-ES-093

**September 24, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

David Roberts ("Roberts") appeals the trial court's order approving the verified closing statement for the estate of Bertha Roberts ("the Estate"). Roberts alleges that the trial court erred in setting off against his share of the Estate a loss resulting from Roberts's breach of his agreement to purchase real property belonging to the Estate.

We affirm.

## Facts and Procedural History

Bertha Roberts ("Bertha") died testate in July 2011. In her Last Will and Testament, Bertha bequeathed her personal and real property in substantially equal shares to each of her seven children.[1] The value of each share was later determined to be approximately $29,000. On November 14, 2011, the Estate's personal representative requested authorization from the trial court to sell the real estate and personal property, including approximately seventy-one acres of land in Fayette County. The trial court issued an order authorizing the sale. An auction was scheduled for September 8, 2012.

On January 31, 2012, Bertha's son, David Roberts ("Roberts") filed a claim against the Estate alleging that he was entitled to $156,100 as compensation for services he provided for his mother and father before their deaths,[2] including mowing, cooking meals, building a fence, and tending to the farm. On May 21, 2013, the trial court disallowed Roberts's claim, concluding that the services he provided to his parents were gratuitous and not compensable.

---

[1] One of Bertha's seven children predeceased her, leaving three children of his own.

[2] Roberts's father died in 2008.

Before the September 8, 2012 auction of the seventy-one acres of real property, Roberts sought but failed to obtain a line of credit to purchase the property. Two days before the auction, Roberts's sister-in-law offered to co-sign for a loan and use her own real property as collateral. At the auction, without any letter of credit or commitment, Roberts submitted the winning bid of $138,000 for the property. Roberts and the Estate entered into a purchase agreement ("the Agreement"), which provided, in relevant part, "I agree to purchase the real estate 'as is' and if in any event decide not to close this real estate transaction, I will forfeit the down payment to the sellers." Tr. Ex. 1. Roberts tendered a check to the Estate for the down payment amount of $13,800.

After the auction, Roberts learned that he had not been approved for financing with his sister-in-law's co-signature. After Roberts sought and was unable to obtain other forms of credit for the purchase, he stopped payment on the $13,800 check for the down payment. The property was later sold at a July 2013 auction for approximately $30,000 less than the price Roberts had agreed to pay.

On September 16, 2013, the Estate's personal representative filed a verified closing statement to close the Estate, which provided, in part:

> [A]s a result of [Roberts's] failure to purchase [the] real estate at the September 8, 2012 auction the estate lost a profit of $35,000.00 when said real estate was sold in July 2013. That David A. Roberts bid on a parcel of the deceased's property knowing that he did not have the funds to purchase said real estate. He wrote a check for $13,800.00 for a down payment . . . and subsequently stopped payment on said check. There were other bidders at the September 2012 auction who would have purchased said property and the Estate would have earned an additional $30,090.05 to distribute amongst the heirs if not for [Roberts's] actions.

\* \* \*

3

[The Estate] requests the Court find that David A. Roberts has received his share of the estate as provided in the deceased's Last Will and Testament and find that David A. Roberts receive nothing further from the remaining Estate assets[.] In addition, the sum of $30,000 that David A. Roberts devalued the Estate by bidding on the real estate without the means to pay for it shall be set off to him. The value of items already received by David A. Roberts[3] and the sum he devalued the estate exceeds the share he would receive under the Will.

Appellant's App. pp. 6-7.

On December 17, 2013, the trial court issued an order accepting the closing statement. Roberts filed an objection to the trial court's order, arguing that the trial court effectively disinherited him. The trial court held a hearing on the matter on February 25, 2014. At the hearing, Roberts testified that he attempted for thirty days after the auction to obtain financing to pay for the property but was unable to do so. He admitted that he bid on the property without any letter of credit or commitment from a creditor. He also admitted that he did not have the funds for the down payment at the time he wrote the check, but stated that the auctioneer indicated to him that the down payment would be taken from Roberts's share of the Estate.

On March 3, 2014, the trial court issued an order concluding that:

[T]he sum of $13,800.00 which was the down payment on the real estate bid on by David A. Roberts was to be forfeited to the Estate if the sale did not close as said sale was not contingent upon financing. David A. Roberts stopped payment on the check written for said down payment.

[T]here was a loss of $30,000 between the time of the September 2012 real estate auction and the July 2013 auction which was a result of David A.

---

[3] The closing statement provided that, prior to the auction, Roberts received personal property from the Estate valued at $8,550, including a hay wagon, a truck, firearms, and proceeds from the sale of cattle.

4

[Roberts's] negligent bidding on said real estate in September 2012 when he testified that he did not have the funds to purchase.

Said loss shall be set off against David A. [Roberts's] 1/7 share of the Estate of Bertha Roberts.

Appellant's App. p. 18.

Roberts now appeals.

## Discussion and Decision

Where, as here, the trial court enters findings of fact and conclusions thereon, the trial court's specific findings will not be set aside unless they are clearly erroneous, and we will affirm the trial court's general judgment on any legal theory supported by the evidence. Apter v. Ross, 781 N.E.2d 744, 751 (Ind. Ct. App. 2003). A finding is clearly erroneous when no facts or inferences drawn therefrom support the finding. Id. On review, we neither reweigh the evidence nor reassess the credibility of witnesses. Id. Instead, we consider only the evidence and reasonable inferences from the evidence that support the finding. Id. "We owe no deference to a trial court, however, on matters of law, reviewing these de novo." Argonaut Ins. Co. v. Jones, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011).

Generally, the construction of a written contract is a question of law which we review de novo. Jenkins v. South Bend Cmty. Sch. Corp., 982 N.E.2d 343, 347 (Ind. Ct. App. 2013). "A long-standing principle of contract interpretation is that a court on review must accept an interpretation of a contract that harmonizes all the various parts, so that no provision conflicts with, is repugnant to, or neutralizes any other contractual provision." Id. at 348.

5

Here, Roberts contends that, pursuant to the Agreement, the trial court's award of $30,000 in breach of contract damages to the Estate was improper. Roberts argues that the Agreement provides only for the forfeiture of the down payment in the event that the purchase was not completed, and not for any additional damages.[4] He declares, "There is not contained in such Purchase Agreement any other language with respect to any penalty or further rights or remedies that the Seller may have other than that that is quoted." Appellant's Br. at 11. Put simply, Roberts argues that the Agreement's provision for the forfeiture of the down payment in the event that the sale did not close is a liquidated damages clause that forecloses the recovery by the Estate of any additional damages.

The term "liquidated damages" applies when a specific sum of money has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by either party for a breach of the contract by the other. Merrillville Conservancy District v. Atlas Excavating, Inc., 764 N.E.2d 718, 724 (Ind. Ct. App. 2002). "The distinction between a penalty provision and one for liquidated damages is that a penalty is imposed to secure performance of the contract and liquidated damages are to be paid in lieu of performance." Dean V. Kruse Found., Inc. v. Gates, 973 N.E.2d 583, 591 (Ind. Ct. App. 2012). Liquidated damages clauses provide for the forfeiture of a stated sum of money upon a breach of contract without proof of damages and are generally enforceable where

---

[4] Roberts also argues that the trial court erred in determining that Roberts's negligence was the reason the Estate lost $30,000 in profit on the sale of the property. He claims that the trial court "implicitly has found that David Roberts breached his duty to his Mother's estate by not being able to secure the financing that he was previously assured would occur." Appellant's Br. at 9. This claim is without merit. It is apparent from the record that the trial court did not base its judgment on any alleged breach of duty on Roberts's part.

6

the nature of the agreement is such that damages for breach would be uncertain, difficult, or impossible to ascertain.  Id.  In general, liquidated damages are the sole amount of damages to be recovered by the non-breaching party.  Atlas Excavating, 764 N.E.2d at 724.

In Dean v. Kruse, we set forth certain factors for consideration in determining whether a provision constitutes a penalty or a liquidated damages clause, but acknowledged that there "are no hard and fast guidelines to follow."  973 N.E.2d at 591-92.  Those factors include a consideration of (1) how the provision is labeled, (2) whether there is an intent to penalize the purchaser for a breach or if there is an intent to compromise, (3) the proportion of the amount claimed as liquidated damages with the amount of the loss likely to occur if there is a breach of the agreement, and (4) whether the damages are ascertainable or certain in the event of a breach.  Id. at 591-93.

Applying those factors to the provision here, we conclude that the trial court correctly found that the Agreement's forfeiture of down payment clause was to serve as a penalty in the event of a breach rather than as a provision for liquidated damages.  See Dean, 973 N.E.2d at 594 ("[I]n most real estate purchase agreements, a measure of damages should be readily ascertainable.")  Roberts bid $138,512.40 for the property and the subsequent purchase price was approximately $30,000 less than that.  See id. ("The measure of damages in a breach of real estate contract is the difference between the sale price of the property to be sold and the fair market value of the property at the time of breach[]" and "[t]he price paid by a subsequent purchaser following the breach may also be admissible as evidence of the property's fair market value.").  The Estate also

7

submitted evidence of the cost to maintain the property in the interim. The language of the Agreement indicates that the down payment is intended to be partial payment of the purchase price, suggesting that the down payment was not paid in lieu of performance, but instead as compulsion for Roberts to complete his purchase of the property following the auction. And, though there is no mention of forfeiture as a penalty, the provision is also not labeled as liquidated damages.

Therefore, relying on a presumption that "a lump sum named by the parties to a contract is a penalty rather than liquidated damages" and that ambiguities in the contract must be construed against the drafter, it is apparent that the provision is an unenforceable penalty and the trial court's judgment was not clear error. Mandle v. Owens, 164 Ind. App. 607, 330 N.E.2d 362, 363 (1975), trans. denied. See Dean V. Kruse Found., Inc. v. Gates, 973 N.E.2d 583 (Ind. Ct. App. 2012) trans. denied. (concluding that auction sale purchase agreement's earnest money forfeiture clause indicated intent to penalize purchaser for breach rather than intent to compensate seller in event of breach, supporting finding that clause was unenforceable penalty rather than enforceable liquidated damages clause, where earnest money deposit was clearly specified as partial payment of purchase price, suggesting compulsion for purchaser to complete purchase, provision was not labeled as liquidated damages, and agreement provided for remedy of specific performance in favor of seller in event of default); Rogers v. Lockard, 767 N.E.2d 982 (Ind. Ct. App. 2002) (holding that clause in a real estate purchase agreement providing for forfeiture of earnest money was unenforceable penalty, not liquidated damages, where

agreement provided for other vendor remedies at law and in equity, and actual damages could be easily determined).

## Conclusion

For all of these reasons, we conclude that the trial court did not err in setting off against Roberts's share of the Estate the $30,000 loss resulting from Roberts's breach of his agreement to purchase the Estate's real property.

Affirmed.

RILEY, J., and CRONE, J., concur.